**CASE NO. 13-2537**

In The

# United States Court of Appeals

## For The Fourth Circuit

**JOHN DOE, Individually and as parents and next friends of J.D., a minor child; JANE DOE, Individually and as parents and next friends of J.D., a minor child,**

*Plaintiffs – Appellants*,

**v.**

**THE BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY; KATHLEEN SCHWAB,**

*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT**

––––––––––––

**BRIEF OF APPELLEES**

––––––––––––

Abbey G. Hairston
Shana R. Ginsburg
THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, Maryland  20770
(301) 441-1400

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  13-2537        Caption:  John Doe,et al. v. Board of Education of Prince George's County, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Board of Education of Prince George's County, Maryland
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature:  Abbey G. Hairston                    Date:    January 6, 2014

Counsel for:  Board of Education

## CERTIFICATE OF SERVICE
****************************

I certify that on    January 6, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Sharon Krevor Weisbaum, Esq.
Brown, Goldstein & Levy, LLP
120 East Baltimore St.
Suite 1700
Baltimore, Maryland 21202

Abbey G. Hairston                             January 6, 2014
        (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 13-2537        Caption: John Doe,et al. v. Board of Education of Prince George's County, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Kathleen Schwab
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: Abbey G. Hairston          Date: January 6, 2014

Counsel for: Kathleen Schwab

## CERTIFICATE OF SERVICE
****************************

I certify that on ___January 6, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Sharon Krevor Weisbaum, Esq.
Brown, Goldstein & Levy, LLP
120 East Baltimore St.
Suite 1700
Baltimore, Maryland 21202

Abbey G. Hairston                 January 6, 2014
(signature)                       (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION...........................................................................1

STATEMENT OF THE ISSUES...................................................2

STATEMENT OF THE CASE .......................................................3

STATEMENT OF FACTS ..............................................................8

    The Board's Administrative Procedures addressing reports of student-on-student harassment .................................................9

    Ms. Jellison's Communication Log from SY 2009.......................................11

    Appellees' investigations of J.D.'s complaints in SY 2010 ..........................14

ARGUMENT SUMMARY ...........................................................18

    Title IX...............................................................................18

    Negligence .........................................................................21

    Gross Negligence................................................................21

    Contributory Negligence .....................................................22

STANDARD OF REVIEW ..........................................................23

ARGUMENT ...............................................................................24

    I.    The District Court Did Not Err In Granting Summary Judgment to Appellees as to Appellants' Title IX Claim ....................................24

i

A.  The District Court Should Have Concluded that Appellants' Alleged Sexual-Orientation Harassment Is Not Actionable Under Title IX ...................................25

B.  The District Court could have concluded that the alleged sexual harassment was not so severe as to deny J.D. educational opportunities ........................................28

1.  The alleged harassment was not pervasive....................28

2.  The District Court should have found that J.D. was not denied any educational opportunity ........................30

C.  Appellees Were Not Deliberately Indifferent to Appellants' Complaints ..........................................36

1.  Appellants failed to meet the "actual notice" requirement ...................................................36

2.  Appellees' response is not one of deliberate indifference ...................................................39

II.  Negligence Claims ...........................................48

Appellees Can Not be Liable for a Breach of Duty to Investigate Complaints of Harassment and Protect J.D...................48

III.  Contributory Negligence ...................................54

CONCLUSION ......................................................58

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>CASES</u>

*Adler v. Wal-Mart Stores, Inc.*,
    144 F.3d 664 (10th Cir. 1998) ........................................................47

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......................23, 24

*Ashburn v. Anne Arundel County*,
    306 Md. 617, 510 A.2d 1078 (1986) ....................................................... 48-49

*Baltimore County v. State, Use of Keenan*,
    232 Md. 350, 193 A2d 30 (1963) ...........................................................54

*Barbre v. Pope*,
    402 Md. 157, 935 A.2d 699 (2007) ..........................................................53

*Beale v. Hardy*,
    769 F.2d 213 (4th Cir. 1985) .................................................................24

*BG&E v. Lane*,
    338 Md. 34, 656 A.2d 307 (1995) ...........................................................48

*Billings v. Shaw*,
    247 Md. 335, 231 A.2d 12 (1967) ..........................................................55

*Boyer v. State*,
    323 Md. 558, 594 A.2d 121 (1991) ..........................................................53

*Brown v. Rogers*,
    19 Md. App. 562, 313 A.2d 547 (1974) ....................................................54

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .............................23

*City of Baltimore v. Whittington*,
 78 Md. 231, 27 A. 984 (1893) ................................................................36, 39

*Davis v. Monroe County Board of Education*,
 526 U.S. 629 (1999)................................................................................*passim*

*Dawson v. Christopher*,
 258 Md. 413, 265 A.2d 906 (1970) ......................................................... 54-55

*DeShaney v. Winnebago Cnty. of Dep't of Soc. Servs.*,
 489 U.S. 189 (1989).................................................................................51, 52

*Doe v. Town of Bourne*,
 2004 WL 1212075 (D. Mass. 2004) ...............................................................28

*Duncan v. U.S.*,
 2011 WL 2746291 (D. Md. 2011) ..................................................................54

*Edens v. Kennedy*,
 112 F. App'x 870 (4th Cir. 2004).....................................................................44

*Franklin v. Gwinnett County Public Schools*,
 503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992) ..............................46

*Gabrielle M. v. Park Forest-Chicago Heights*,
 315 F.3d 817 (7th Cir. 2003) ....................................................................31, 33

*Gebser v. Lago Vista Independent School Dist.*,
 524 U.S. 274, 118 S. Ct. 1989 (1998) ........................................36, 39, 40, 46

*Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*,
 64 F.3d 962 (4th Cir. 1995) ............................................................................24

*Hamm v. Weyauwega Milk Prods., Inc.*,
 332 F.3d 1058 (7th Cir. 2003) ........................................................................26

*Harris v. Forklift Sys., Inc.*,
 510 U.S. 17 (1993)...........................................................................................28

*Hawkins v. Sarasota County Sch. Bd.*,
    322 F.3d 1279 (11th Cir. 2003) ...............................................................31, 32

*Hayut v. State University of New York*,
    352 F.3d 733 (2d Cir. 2003) ................................................................. 31-32

*Hunter v. Board of Education of Montgomery County*,
    292 Md. 481, 439 A.2d 582 (1982) ....................................................49, 50, 52

*Jennings v. Univ. of N.C.*,
    482 F.3d 686 (4th Cir. 2007) ..................................................................*passim*

*Kritsings v. State Farm Mut. Auto. Ins. Co.*,
    189 Md. App. 367, 984 A.2d 395 (2009) ........................................................55

*Long v. Murray County School District*,
    2012 WL 2277836 (N.D. Ga. 2012) ..............................................................41

*Long v. Murray County School District*,
    522 Fed. App'x 576 (11th Cir. 2013) ............................................................41

*Lunsford v. Bd. of Educ. of Prince George's Cnty.*,
    280 Md. 665, 374 A.2d 1162 (Md. 1977) ......................................................49

*M.D. v. School Bd. of City of Richmond*,
    2014 WL 929432 (4th Cir. 2014) ...........................................................26, 27

*Markevicz v. Garcia*,
    Civil Action No. 8:08-cv-02877-AW,
    2011WL6888641 (D. Md. Dec. 29, 2011) .....................................................53

*Menish v. Polinger Co.*,
    277 Md. 553, 356 A.2d 233 (1976) .............................................................54

*Meritor Savings Bank, FSB v. Vinson*,
    477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) ..................................28

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*,
    186 F.3d 1238 (10th Cir. 1999) ...................................................................31

v

*N.T. v. Balt. City Bd. of Sch. Com'rs*,
No. JKB-11-356, 2011 WL 3747751 (D. Md. Aug. 23, 2011) ...................50

*New Jersey v. T.L.O.*,
469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985) ...............................40

*Oddis v. Greene*,
11 Md. App. 153, 273 A.2d 232 (1971) ......................................................55

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)............................................................................25, 29, 47

*Pahssen v. Merrill Community School Dist.*,
668 F.3d 356 (6th Cir. 2012) .....................................................................32

*Pennhurst State School and Hospital* v. *Halderman*,
451 U.S. 1, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981) .................................36

*Pinder v. Johnson*,
54 F.3d 1169 (4th Cir. 1995) ......................................................................51

*Pittway Corp. v. Collins*,
409 Md. 218, 973 A.2d 771 (2009) .............................................................53

*Potts v. Armour & Co.*,
183 Md. 483, 39 A.2d 552 (1944) .........................................................54, 57

*Pratt v. Coleman*,
14 Md. App. 76, 286 A.2d 209 (1972) ........................................................55

*Prudential Sec. Inc. v. E-Net, Inc.*,
140 Md. App. 194, 780 A.2d 359 (2001) ....................................................54

*Ratner v. Loudon County Public Schools*,
16 Fed. App'x 140 (4th Cir. 2001), *cert. denied*,
534 U.S. 1114 (2002) ..................................................................................48

*Rowinsky v. Bryan Independent School Dist.*,
80 F.3d 1006 (5th Cir. 1996) ......................................................................46

*Seabulk Offshore, Ltd. v. American Home Assur. Co.*,
   377 F.3d 408 (4th Cir. 2004) ........................................................23

*Slaysman v.Gerst*,
   159 Md. 292, 150 A. 728 (1930) ................................................55

*Spriggs v. Diamond Auto Glass*,
   242 F.3d 179 (4th Cir. 2001) ......................................................23

*Taylor v. Armiger*,
   277 Md. 638, 358 A.2d 883 (1976) ............................................54

*Valentine v. On Target, Inc.*,
   353 Md. 544, 727 A.2d 947 (1999) ............................................48

*Vance v. Spencer County Public School Dist.*,
   231 F.3d 253 (6th Cir. 2000) .................................................34, 46

*Waybright v. Frederick Cnty.*,
   528 F.3d 199 (4th Cir. 2008) ......................................................51

## STATUTES

20 U.S.C. § 1681(a) .........................................................................1

29 U.S.C. § 794.............................................................................33

## RULES

Fed. R. App. P. 28(a)(4)(A) ..........................................................1

Fed. R. App. P. 28(a)(6)................................................................3

Fed. R. Civ. P. 56(c)....................................................................23

Md. Rules of Evidence 5-702 ......................................................44

## REGULATION

59 C.F.R. § 106 ............................................................................46

## OTHER AUTHORITIES

141 A.L.R. Fed. 407, RIGHT OF ACTION UNDER TITLE IX OF EDUCATION
AMENDMENTS ACT OF 1972 (20 U.S.C.A. §§ 1681 ET SEQ.) AGAINST SCHOOL
OR SCHOOL DISTRICT FOR SEXUAL HARASSMENT OF STUDENT BY STUDENT'S
PEER.................................................................................................................46, 47

Random House Dictionary of the English Language 1415 (1966) ........................40

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

Appellees supplement Appellants' jurisdictional statement by providing additional relevant facts in accordance with Rule 28(a)(4)(A):

Appellee Board of Education of Prince George's County is a recipient of federal education funding within the meaning of Title IX, 20 U.S.C. § 1681(a). Appellants filed a lawsuit against the Appellee and its employee, Appellee Kathleen Schwab, including a claim under Title IX alleging a failure to protect the minor Appellant, J.D. from same-sex sexual harassment along with pendent claims of negligence. Appellants are appealing the decision of the District Court of Maryland granting summary judgment to Appellees on all claims.

## <u>STATEMENT OF THE ISSUES</u>[1]

1. Did the District Court err by granting Appellees' Motion for Summary Judgment as to Appellants' Title IX claim against the Board of Education and Kathleen Schwab?

2. Did the District Court err by granting Appellees' Motion for Summary Judgment as to Appellants' negligence claim against the Board of Education and Kathleen Schwab under the theory of respondeat superior?

3. Did the District Court err by granting Appellees' Motion for Summary Judgment as to Appellant's gross negligence claim against Kathleen Schwab?

---

[1] Appellees include this separate Statement of the Issues for several reasons. First, Appellants' Statement of the Issues fails to state the question before this Court — whether the District Court erred in granting summary judgment to Appellees. Second, Appellants have improperly consolidated their gross negligence and negligence claims under one theory of negligence. Third, Appellants' Issue No. 1(b) misstates Appellees' duty of care to J.D, as there is no duty to "properly investigate and intervene to stop a known pattern of sexual harassment." Finally, Appellees note that there is no basis to include conclusory statements of fact in the Statement of Issues, especially those that are not part of the record, or are flatly contradicted by the record. (i.e., J.D. has never testified that he had a "fear of using the school bathroom", instead, he testified that he "did not want to use the school bathrooms.").

2

## STATEMENT OF THE CASE[2]

On November 10, 2011, Appellants filed their Complaint against both the Board of Education of Prince George's County and Kathleen Schwab, who was an administrator at Robert Goddard Montessori School during the time period at issue. Appellants asserted a Title IX sexual harassment claim, along with a state law claim for negligence against both Appellees and a state law claim for gross negligence claim against Appellee Schwab.

Appellants contended in their Complaint that during the 2008-2009 and 2009-2010 school years, while their son, J.D. was in fourth and fifth grade at the Robert Goddard Montessori School, (RGMS), J.D. was the victim of ongoing bullying and sexual abuse. Specifically, Appellants Jane and John Doe alleged that during the 2008-2009 school year, J.D. reported to Appellees that another male student repeatedly exposed his genitals to J.D., and forced J.D. to touch the student's genitals, sometimes up to several times a day. Appellants alleged that they reported the abuse to Appellee Schwab, and that Schwab "denied the conduct and refused to conduct further investigation or take any additional action." JA 12. Appellants alleged that J.D. complained about the abuse to his teacher on multiple

---

[2] Rule 28(a)(6) provides that Appellants' Brief "must contain (6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." Appellants have not complied with any of the requirements of this Rule, so Appellees provide this Statement of the Case accordingly.

occasions during the year, "but eventually stopped telling her because the school administration did not do anything to help." JA 12.

Appellants further alleged that in the 2009-2010 school year, J.D. was harassed by the same student in a school bathroom, but when Appellees reported the incident to Appellee Schwab and then asked to view school security video tapes, the Appellants' requests were refused, and no safety measures were put in place to protect J.D. JA 13.

As part of Appellants' claims for damages, and as factual support for their negligence and Title IX claims, Appellants asserted that J.D. suffered physical, emotional, and psychological injury, including but not limited to anguish, shame, harassment, embarrassment, nightmares, difficulty sleeping and difficulty completing school work. JA 15.

On December 15, 2011, Appellees filed a Motion to Dismiss the Appellants' Complaint. In pertinent part, the Appellees alleged that Appellants had failed "to sufficiently plead satisfaction of the required elements of a Title IX claim," JA 22, and had failed to establish the duty prong of both negligence claims because "the Board had no duty to J.D. based on the notion that government entities cannot incur liability for injuries that third parties perpetrate." JA 31. In a Memorandum Opinion and Order issued on August 16, 2012, the Court denied Appellees' Motion to Dismiss, finding that the Appellants had made out a prima facie case under Title

IX, gross negligence and negligence.  In so holding, the Court noted that while Appellants' Title IX cause of action "sufficiently state[d] that Schwab and/or Johnson had actual notice of the alleged harassment", "[Appellants did] not allege that, at least as a direct matter, the Board had actual notice of the alleged harassment." JA 27. Also, Appellants had not shown "a reasoned basis for their alleged failure to comply with [Administrative Procedure] 4170's procedure", or that "Appellees failed to take advantage of AP 4170's procedures."  JA 31. Additionally, the Court considered the negligence and gross negligence claims together, and found that the Appellants had made out a facially plausible claim for negligence, although it did not conclude at that time whether the Board owed J.D. a duty to protect him from his Classmate's conduct.  JA 33 ("It is plausible that the Board owed J.D. a duty to protect him from Classmate's conduct.").

After the denial of Appellees' Motion to Dismiss, the parties engaged in discovery.  Appellees produced over 1800 pages of Bates-stamped documents in response to Appellants' request for production of documents.  The parties also noted a combined seventeen depositions of fact and expert witnesses.

At the close of discovery, Appellees filed a 63-page Motion for Summary Judgment contesting the viability of all of Appellants' claims. Appellants filed a 50-page Response in Opposition and Appellees submitted a lengthy Reply. The

5

Court held a motions hearing on October 8, 2013 before issuing its Memorandum Opinion on November 18, 2013.

In considering Appellees' Motion for Summary Judgment as to Title IX, the Court posited that "the issue is not  whether Classmate sexually harassed JD, but rather, whether Defendants evinced such clearly unreasonable conduct in responding to Plaintiffs' allegations that they "effectively cause[d] discrimination", citing to *Davis v. Monroe County Board of Education*, 526 U.S. 629, 642-3 (1999). JA 298.  In granting summary judgment as to Title IX, the Court held:

1. While "A reasonable juror could infer that the harassment stemmed from sexual desire", JA 287, the record evidence did not support the allegation that the "harassment had a negative effect on JD's ability to benefit from a particular program or activity because it prevented him from using the school bathroom"[3],  JA 289;

2. Although the Board failed to follow all sexual harassment grievance procedures in accordance with AP 4170, "No reasonable juror could conclude that Defendants' response to the harassment was clearly unreasonable", JA 291, because "Defendants assert, and Plaintiffs do not

---

[3] The Court further noted that it was "unprepared to conclude that harassment that has no tangible effect on a student's participation in a particular program or activity, but that compels the child to withdraw from school, is unactionable under Title IX.  However, the Court need not definitively decide this question because…Plaintiffs have not established a basis for institutional liability." JA 290.

contest, that [the Classmate's] suspension was served in Johnson's office", "Johnson returned Classmate to the classroom only after conferring with Classmate and his parents", JA 292, and "Defendants implemented a sign-in/sign-out procedure and provided JD with a student escort to the bathroom." JA 293; and

3. Even though Plaintiffs had "overlooked[ed] the presence of evidence contradicting JD's allegations regarding bathroom-related incidents of harassment", no reasonable jury would believe JD's version of the facts. Moreover, "Plaintiffs disregard evidence that they failed to comply with AP 4170...by failing to report, or to promptly report, some of the instances of harassment." JA 298.

Additionally, the Court granted summary judgment as to the gross negligence claim, holding that "no reasonable juror could conclude that Defendant intentionally inflicted JD's injury or acted as if JD's rights did not exist" because "Defendants acknowledged that JD had a right to be free from Classmate's sexual harassment, investigated at least some of Plaintiffs' complaints, and took steps to remedy the harassment." JA 299-300.    The Court noted, too, that Plaintiffs "devoted two sentences in their 50-page Response in Opposition to argue that summary judgment on their gross negligence claim is improper." JA 300.

Finally, the Court granted summary judgment as to the ordinary negligence claim, holding that "no reasonable juror could conclude that Defendants failed to exercise ordinary care to protect JD from Classmate's harassment" since Defendants "took swift and substantial action" despite "having reason to believe that [the bathroom stall] incident never occurred." JA 300.

This appeal followed.

## STATEMENT OF FACTS

1.      J.D. was a student newly enrolled in the fourth grade and also in the fifth grade at RGMS during School Year 2008/2009 (SY 2009) and School Year 2009/2010 (SY 2010). JA 41.

2.      Ms. Suzanne Johnson was the Principal of RGMS until April 2009. Ms. Johnson took leave from work at that time and passed away on May 27, 2009. JA 42.

3.      Appellee Katherine Schwab was employed by the Appellee Board as Assistant Principal of RGMS from August 2007 to April 2009. She was appointed as Principal of RGMS after Ms. Johnson left the school. JA 11.

4.      J.D. was assigned to Ms. Lisa Jellison's combined fourth through sixth grade class for SY 2009 and SY 2010. JA 11. J.D. had a § 504 Plan put in place by RGMS to ensure he was afforded equal access to educational benefits.

8

5.      Student M.O.[4] was also assigned to Ms. Jellison's class for the same two school years.  JA 42.

### The Board's Administrative Procedures addressing reports of student-on-student harassment

6.      The Superintendent of Schools for Prince George's County Public Schools (PGCPS) promulgated Administrative Procedure 4170 (Discrimination and Harassment), Administrative Procedure 5143 (Bullying, Harassment and Intimidation) and Administrative Procedure 10101 (Code of Student Conduct). JA 42.

7.      Administrative Procedure No. 4170 ("AP 4170") serves the purpose of "providing grievance procedures for student and employee complaints of all forms of discrimination, harassment, bias, or extremism." JA 42; JA 219.

8.      According to AP 4170, sexual harassment may include, "unwanted sexual attention on a continuing and pervasive basis from peers, or anyone with whom the student must interact in order to fulfill employment or educational responsibilities where the individual's responses are restrained by fear of reprisals." JA 42-43; JA 221.

9.      AP 4170 along with its counterpart, AP 5143 ("Bullying, Harassment or Intimidation"), contain guidance on how to respond to and investigate

---

[4] The District Court referred to the student alleged to have engaged in wrongful conduct as "Classmate"; the parties referred to him as "M.O." in their respective pleadings.

9

complaints made by students against other students. Enacting these procedures is contingent upon student reporting, so 4170 stresses that students "subject to discrimination or harassment should report such conduct promptly." JA 225. Once reported, AP 5143 ensures that "school administrators and staff take measures to promote the prevention of bullying, harassment, and intimidation as well as prohibit reprisal or retaliation against individuals who report these acts." JA 43.

10.     During SY 2009 and SY 2010, Appellants did not submit a Discrimination and Harassment Incident Report. JA 43.

11.     Administrative Procedure 10101 ("AP 10101"), the Code of Student Conduct, provides procedures to maintain a positive learning environment, and a good state of discipline within the schools. According to AP10101, "in the event a student demonstrates an unwillingness to comply with school and/or classroom regulations, the teacher may send a student to the Principal or his/her designee. The Principal or his/her designee shall employ the least severe option that can reasonably be believed to resolve the problem." JA 137.

## Ms. Jellison's Communication Log from SY 2009[5]

12.     Ms. Jellison voluntarily kept a Communication Log which detailed her behavioral interventions with her students, including whether a PS-74 form (the form utilized by teachers to report circumstances of a student's removal from class) was prepared.  JA 44. The Board does not require that teachers or administrators keep such logs, nor is there a requirement to record any particular interventions done with students in the general education program.[6]

13.     Ms. Jellison's Communication Log does not contain an entry that indicates that J.D. specifically reported an act of sexual harassment directly to Ms. Jellison. JA 45.

14.     The Communication Log does include Jellison's documentation of reports made of sporadic misconduct involving M.O. and J.D. for a brief period during J.D.'s first year at RGMS, towards the end of the first

---

[5] The Court should not consider unsubstantiated allegations in Appellants' Statement of Facts. For example, Appellants have no basis to allege in their Statement of Facts that "As a result of their lack of training or indifference, the teachers, administrators, and staff at RGMS turned a blind eye to complaints of sexual harassment claims." *Appellants' Brief*, *p.14*.

[6] Appellants allege that Ms. Jellison's Communication Log demonstrates a "lax attitude" towards reporting and/or investigating J.D.'s complaints because certain communications between Appellants and Appellees were not included. The existence of the log itself supports the opposite inference—that Ms. Jellison went above and beyond her required duties to document interventions and disciplinary measures.

semester of SY 2009 and then a three-week period in the second semester of SY 2009 for which M.O. was suspended (JA 45):

a. In early December 2008, Ms. Jellison reported in her log that M.O. and another student incited a "Don't Talk to [J.D.] Day" and told students in Ms. Jellison's class to ignore and not speak to J.D. JA 314. J.D. reported the incident several days after it occurred. JA 314. J.D.'s report apparently angered some students in his class, resulting in a fight at recess.   JA 314. In response, Ms. Jellison gave an explanation about what harassment was, why it was serious, and that harassing another student can result in suspension. Ms. Jellison noted that she spoke with Appellant Jane Doe about the incident and changed J.D.'s seat. JA 314.  Ms. Jellison also referred the matter to Appellee Schwab, who "organized [a] community meeting to talk about bullying and harassment, ostracizing, [and] building community", "spoke with [the] students", "thanked [J.D.] for reporting and informed him (new student) of our commitment to maintain respectful school community", and "asked him to report incidents when they occur." JA 323.  Thereafter, Appellee Schwab noted that she monitored J.D.'s progress through teacher conferencing

12

and that "no further incidents [were] reported through Dec[ember]."
JA 323.

b. On or about February 26, 2009, J.D. reported to Jellison that M.O.
accosted him in a hallway.  J.D. did not report that the contact was
sexual in nature.  The matter was referred to Principal Johnson. JA 45;
314.

c. On or about March 12, 2009, J.D. reported to his father, Appellant
John Doe, that M.O. was making sexual remarks and gestures to J.D.
and others.  Appellee Schwab investigated the matter, and rearranged
Ms. Jellison's classroom so J.D. and M.O. were as far apart as
possible. JA 45; 314.  Ms. Johnson contacted M.O.'s parents and
placed M.O. on a behavioral contract pursuant to AP 10101. JA 324.

d. On or about March 16, 2009, female students in Ms. Jellison's class—
not J.D.—notified Ms. Jellison that M.O. made "humping gestures"
towards J.D. and female students.  Ms. Jellison reported the incident
to Principal Johnson.  M.O. was subsequently removed from the
classroom for the maximum five days of In-School Suspension.  J.A.
45; 314. There were no other reported incidents in SY 2009.

15.    Appellant Jane Doe attended meetings at RGMS through SY 2009 as
part of J.D.'s § 504 Plan review process and acknowledged that she

13

approved of the services being provided to ensure that J.D. was not denied any educational benefits while at RGMS. JA 356.

16.    During SY 2009, J.D. attended 176 days of school and missed only 4. JA 360.

### Appellees' investigations of J.D.'s complaints in SY 2010

17.    It was not until November 2009 that J.D. made another report about M.O. J.D. reported that M.O. made a "harassing remark" to him at the water fountain during dismissal the previous afternoon. JA 324.    However, Security Officer David Pfeil reviewed security footage and determined that J.D. had never left his classroom for the forty-five minutes prior to and during dismissal. JA 46.    Nevertheless, Appellee Schwab conferred with both J.D. and M.O. and "warned both [boys] that any further incidents of harassment would be taken as grounds for suspension and that they must be reported immediately." JA 324.

18.    On or about December 7, 2009, J.D. reported to Assistant Principal Deatrice Womack that on or about December 4, 2009, before recess, M.O. intimidated J.D. in a school bathroom. JA 324. The report did not include an allegation of sexual assault. JA 324; 353. Appellee Schwab and Officer Pfeil reviewed video tapes with Appellant John Doe and found no evidence of J.D. being followed into the bathroom, let alone being in the bathroom at the

same time as M.O. JA 324. Appellee Schwab's investigation of the incident revealed that other male students witnessed J.D. enter the bathroom <u>after</u> recess and push and kick another boy, Akin, on the floor. JA 368. Following the investigation, Appellee Schwab set up a student/parent conference with the Appellants, reminded J.D. to report his allegations immediately, gave J.D. an escort to the bathroom and the option to access the school nurse's bathroom,[7] and implemented a sign-out log procedure in all elementary and middle school classrooms so that J.D. and M.O. would not be permitted to leave their classroom at the same time.[8] JA 324-325; JA 368-369. Ultimately, J.D. requested that the bathroom escort system be stopped. JA 348; 550.

19.     Appellants did not report any other incidents to the Appellees in the remaining five months of SY 2010.

---

[7] Appellants' Brief contains an improper new allegation, that the option of accessing the nurse's bathroom was not feasible, *Appellants' Brief*, *p. 20*, and attempt to substantiate their allegation by referring to an exhibit that is not included in the Joint Appendix. For purposes of this appeal, this new allegation is not substantiated by the record and must be disregarded.

[8] Appellants' allegation that "there is no evidence that school officials made any attempt to discern which bathroom this [incident] occurred", *Appellants' Brief*, *p. 19*, is without merit. Moreover, Appellants' attempt to substantiate their allegation by referring to an exhibit that is not included in the Joint Appendix must be disregarded.

20.     J.D. continued to attend RGMS through the end of SY 2010, at which point J.D. completed his final year at RGMS's Upper Elementary School.

21.     Throughout his two years at RGMS, J.D. was actively engaged in numerous school-sponsored and extracurricular activities and programs. He went on a trip to New York City in SY 2009 and again in SY 2010; he participated in the Model UN Program in SY 2009 and SY 2010; and he played flute and/or recorder in SY 2009 and 2010. JA 357-359. After school, J.D. played tennis, often leaving early from school to do so. JA 359.

22.     Appellant Jane Doe again attended meetings for J.D.'s § 504 Plan review process through SY 2010 and again acknowledged that she approved of the services that were set up to ensure that J.D. was not denied any educational benefits while at RGMS. JA 356.

23.     During SY 2010, J.D. attended 173 days of school and missed only 3. JA 361.

24.     It was not until the school year ended in June 2010 that Appellant John Doe found sexually explicit images and messages on J.D.'s phone. JA 350. Neither J.D. nor any staff person from RGMS saw the images or messages, and Appellants never reported this information to the staff at RGMS. JA 46.

25.     Instead on June 25, 2010, Appellant John Doe contacted the Prince George's County Police Department and reported that he "was told by J.D. that M.O. had sexually assaulted him on four or five separate occasions through the past two years. J.D. stated that M.O. would corner him either in the library or bathroom at the school and force either oral or anal sex on him." JA 330.

26.     Appellant Jane Doe presented J.D. to the Child and Adolescent Protection Center at Children's Hospital, and reported that M.O. had texted J.D. in June 2010 and indicated that the boys had performed anal sex on one another in the bathroom and J.D. performed oral sex as well. JA 47.

27.     On June 27, 2010, Appellant Jane Doe filed an Incident Report with the Prince George's County Police alleging that J.D. was sexually assaulted by M.O.  The police categorized the incident as a second degree sex offense. JA 330-332.

28.     On June 28, 2010, Detective Clifford of the Prince George's County Police Department's Criminal Investigations Division received the case for investigation, contacted Dr. Allison Jackson at Children's Hospital, and was advised that Dr. Jackson had performed a sexual assault exam on J.D. and found no signs of injury. JA 330-332.

29.     Detective Clifford completed a Continuation Report on August 5, 2010.  In his report, he noted that "the suspect stated that the sexual acts between him and the victim were consensual."  He also noted that "the victim provided a written and oral statement detailing that the sexual acts between him and the suspect were consensual and no force was used." JA 330-332.

30.     Detective Clifford concluded that "based on the victim recanting his original statement, no elements of a sexual assault have been articulated. This case will be closed unfounded." JA 332.

## ARGUMENT SUMMARY

Appellees are not liable for a breach of any duty to J.D.

### Title IX

As to the Title IX claim, a damages remedy under Title IX will not lie unless there is a basis for imputing liability to the Appellee Board, i.e., that the Board through its employees acted with deliberate indifference upon notice of alleged sexual harassment.

With respect to J.D.'s complaints of intimidation and/or alleged harassment, Appellees are afforded flexibility in their response as long as the response is not one of deliberate indifference.  As such, it was not clearly unreasonable for Appellees to respond to J.D.'s complaints through a series of escalating steps that

18

were delineated in AP 10101: RGMS administrators counseled with both J.D. and M.O.; held student conferences with J.D. and M.O. and conducted parent-student conferences; completed numerous inquiries and/or investigations by interviewing students and examining security footage; placed M.O. on a behavior contract; rearranged Ms. Jellison's classroom; removed M.O. from the classroom by giving him the maximum 5-day In-School Suspension allowed under AP 10101; and implemented other procedures to ensure J.D.'s safety, including classroom sign-out log books and a personal bathroom escort system. For these reasons, the District Court was correct in concluding that "no reasonable juror could conclude that Defendants' response to the harassment was clearly unreasonable." JA 291.

Additionally, a damages remedy under Title IX will not lie in cases of student-on-student harassment unless the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit. To that end, Appellants have no evidence to establish that any educational opportunities were denied: J.D. did not discontinue any school activities, did not stop attending school, did not see a drop in his grades, and did not stop accessing school libraries or bathrooms. To be sure, J.D. had a § 504 Plan put in place by the school to ensure he was afforded equal access to educational benefits. While Appellants allege that J.D. feared entering school bathrooms, J.D. ultimately requested that the RGMS school officials discontinue the personal bathroom escort system set up in

February 2010 and indicated to Appellee Schwab that same month that he was not having any more problems. In sum, J.D. was not prevented from accessing any educational opportunities, and the District Court (though refraining from concluding that the harassment had no tangible effect on J.D.'s participation in a particular program or activity, JA 290), should have concluded that the alleged harassment of J.D. by M.O. was not so severe as to deny him access to any educational opportunity.

Third, liability for sexual harassment under Title IX is limited to circumstances wherein the Appellees exercise substantial control over both the harasser and the context in which the known harassment occurs. The only evidence provided by the Appellants that can be authenticated stems from cellular phone texts allegedly sent to M.O. by J.D. The date and time stamps clearly show that the texts were sent outside of school hours, on a Sunday, when Appellees could not have exercised substantial control over either student or the content of their texts. Moreover, J.D. was never injured by the images sent to his phone in June by M.O. because Appellant parents had confiscated J.D.'s phone prior to that time after they discovered that J.D. sent two texts to M.O. asking him to "keep a secret." While the nature of the "secret" was not clear, it is clear from those texts that J.D. considered M.O. a confidant. JA 365.

## **Negligence**

Appellants fail to provide any evidence to support the allegation that Appellee Schwab can be held liable for gross negligence or that the Board can be held liable for the alleged negligence of Appellee Schwab.  Though Appellees maintain that Appellee Schwab did not have a special relationship with J.D. that warranted a duty to protect J.D. from third parties, if Schwab did have a duty to protect J.D., Schwab upheld her duty by responding to J.D.'s complaints with interventions, investigations, and consequences.  The series of escalating steps taken by former Principal Johnson and Appellee Schwab include, but are not limited to: counseling with both J.D. and M.O.; holding parent-student conferences with Appellees and J.D. as well as with M.O and his parents; completing an investigation by interviewing students and examining security footage; rearranging Jellison's classroom so that J.D. and M.O. were on opposite sides of the classroom; suspending M.O.; and implementing procedures to ensure J.D.'s safety, including classroom log books and a personal bathroom escort system for J.D.

## **Gross Negligence**

As to Appellants' claim of gross negligence, Appellants have failed to provide any evidence to suggest that Appellee Schwab acted with wanton or reckless disregard to J.D., or that she intentionally inflicted injury on J.D.  Schwab implemented remedial measures for the protection of J.D. until J.D. himself asked

for certain measures to be discontinued. Schwab also viewed video evidence on at least two occasions, and even permitted Appellant John Doe to do so as well. However, because J.D. did not notify school personnel or his parents until days—*sometimes months*—after the alleged incidents, by which time J.D. could not accurately recall dates, times or details of alleged incidents, neither Appellee Schwab, Office Pfeil, nor Appellant John Doe were able to locate any video evidence to support J.D.'s allegations of sexual assault, if in fact they occurred at all. Alternatively, since J.D. retracted his allegations of sexual harassment during his second police interview, it is likely that no video evidence of sexual assault even existed because J.D.'s claims were patently false.

### **Contributory Negligence**

Finally, liability for all claims is barred due to J.D.'s contributory negligence. J.D. never notified the school of any act of sexual harassment, despite being repeatedly reminded by Appellee Schwab, Principal Johnson, and Ms. Jellison to make timely complaints.

In sum, Appellants failed to provide a preponderance of evidence that the Appellees were deliberately indifferent to the Appellants' or J.D.'s complaints of alleged harassment under Title IX or that they violated the lesser-standard of ordinary prudence under the Maryland negligence standard. Additionally, Appellants have failed to prove that J.D. suffered such severe and pervasive

harassment that he was denied educational opportunities. As a result, the Court should find that the District Court did not err in granting summary judgment for the Appellees and affirm the judgment.

## STANDARD OF REVIEW

The Court of Appeals for the Fourth Circuit reviews grants of summary judgment *de novo*, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408 (4th Cir. 2004); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001).

Summary judgment is appropriate in those cases where the pleadings, affidavits, and responses to discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

If "the evidence is so one-sided that one party must prevail as a matter of law," the Court must affirm the grant of summary judgment in that party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The Appellants "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The "mere existence of a scintilla of evidence in support of the Appellant's position will be insufficient; there must be evidence on which the jury could reasonably find for the Appellant," *Anderson*, 477 U.S. at 244, 106 S. Ct. at 2508. Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See *Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## **ARGUMENT**

### I.    The District Court Did Not Err In Granting Summary Judgment to Appellees as to Appellants' Title IX Claim.

"To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) (s)he was a student at an educational institution receiving federal funds, (2) (s)he was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive so as to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (citation omitted); see also *Davis*, *supra*, 526 U.S. 629, 638-53 (1999).

The Court ultimately disposed of the Title IX claim on the basis of the fourth element—that there was no basis for imputing liability to the Appellees because their response to Appellants' complaints did not rise to the level of deliberate indifference. However, as stated in further detail below, the Court could have also found that the second and third elements of the Title IX claim were not met either.

### A. The District Court Should Have Concluded that Appellants' Alleged Sexual-Orientation Harassment Is Not Actionable Under Title IX.

Courts "look to case law interpreting Title VII for guidance in evaluating a claim brought under Title IX." *Jennings*, 482 F.3d at 695 (citations omitted). Under Title VII, demonstrating that a same-sex harasser's conduct stems from sexual desire suffices to show that the harassment was based on the victim's sex. See *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Conduct stemming from sexual desire generally includes "explicit or implicit proposals of sexual activity," "objectively offensive touching" of a sexual nature, and "sexually charged comments." See *Oncale*, 523 U.S. at 80; *Davis*, 526 U.S. at 653; *Jennings*, 482 F.3d at 695.

In applying *Oncale*, the District Court found that J.D. was harassed based on his gender, but stopped short of analyzing whether Appellants' claim was one of harassment based on sex or harassment based on sexual orientation, because "the caselaw is unsettled on whether simply calling a person gay constitutes harassment

'because of' sex".[9] JA 294 (citing *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003).

Such analysis is now appropriate since the Fourth Circuit recently determined that there is no cause of action under Title IX for sexual orientation harassment. See *M.D. v. School Bd. of City of Richmond*, 2014 WL 929432, *3 (4th Cir. 2014) (holding that M.D.'s rights "will best be protected by the opportunity to ... file a clarified Title IX claim" because M.D.'s complaint alleged harassment based on perceived sexual orientation and therefore failed to state a claim under Title IX). Thus, this Court should determine whether Appellants' Title IX claim actually turns on whether J.D.'s harassment claims stems from M.O.'s perception of J.D.'s sexual orientation, or M.O.'s perception that J.D. "fail[ed] to conform to gender stereotypes." *Id.*

Appellees contend that the record simply does not reflect sex-based harassment. Rather, the record shows that in SY 2009, M.O., who identified as gay, JA 482, questioned J.D. about his actual or perceived sexual orientation. JA 475. That school year, J.D. asked his father what "gay" meant. JA 471. Appellant

---

[9] While stopping short of granting summary judgment as to Title IX because Appellants could not show that J.D. was harassed based on his sex, the Court, in dicta, noted: "All the same, one could not reasonably infer that the alleged homophobic comments were sufficiently pervasive to constitute sexual harassment, or that Defendants' failure to implement particular responses to them caused the complained-of harm.  J.D. does not testify that Classmate called him gay, and J.D.'s father's testimony that Classmate called J.D. gay is inadmissible hearsay." JA 294.

John Doe defined it as "two people of the same sex having a special relationship." JA 482.

The following school year, J.D. admittedly communicated with M.O. on his cell phone, and the boys shared pictures of men having sex with other men. JA 484. According to psychologist Dr. Joan Kinlan, Appellants' expert who evaluated J.D. from July 9, 2010 through February 26, 2011, J.D.'s "biggest fear" during that school year "was that [M.O.] would tell the whole school [J.D.] was gay." JA 484. However, J.D.'s communications and contact with M.O. did not cease due to J.D.'s fear of being "outed"; rather, J.D. admittedly engaged in consensual sex acts with M.O. in the school bathroom. JA 763 ("The victim provided a written and oral statement detailing that the sexual acts between him and the suspect were consensual and no force was used.").

Based on the record, the gravamen of Appellants' claim stems from the boys' actual or perceived sexual orientation of one another, not their gender. Accordingly, the Title IX claim—properly characterized as a sexual-orientation discrimination claim—should have been dismissed by the District Court as not actionable under Title IX. *M.D.*, *supra.*

27

**B. The District Court could have concluded that the alleged sexual harassment was not so severe as to deny J.D. educational opportunities.**

**1. <u>The alleged harassment was not pervasive.</u>**

Under Title VII, sexual harassment is severe or pervasive where, subjectively and objectively, it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The District Court correctly noted that this standard is both modified and elevated in the context of Title IX. See *Davis*, 526 at 649-53. Under Title IX, a private action for damages "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* at 633. A victim's access to an educational opportunity or benefit is effectively barred where the harassment "has a concrete, negative effect on [the victim's] ability to participate in a program or activity." *Jennings*, 482 F.3d at 699; *Cf. Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986); *Doe v. Town of Bourne*, 2004 WL 1212075 (D. Mass. 2004).

Whether gender-oriented conduct is harassment depends on a constellation of surrounding circumstances, expectations, and relationships including, but not

28

limited to, the harasser's and victim's ages[10] and the number of persons involved. *Oncale*, *supra*. Relevant factors also include whether the conduct is frequent, severe, threatening, or humiliating; where it causes the victim serious anxiety, fear, or discomfort, *Jennings*, 482 F.3d at 698-99; or where a drop-off in academic performance coincides with the harassment, *Davis*, 526 U.S. at 652. To that end, the record evidence does not support a finding that the acts between M.O. and J.D. were "severe" or "pervasive" for a number of reasons:

1. J.D. and M.O. were 4th and 5th grade children, and only 9 or 10 years old when the alleged harassment occurred. JA 280.

2. During SY 2009, reports made by J.D. about M.O. were sporadic, and ceased in March 2009 after M.O. was suspended. Refer to Statement of Facts ¶14.

3. During SY 2010, J.D. made only two reports, neither of which were sexual in nature. Refer to Statement of Facts ¶¶17-18.

4. J.D. considered M.O. a friend. By April 2010, J.D had forged such a strong friendship with M.O. that J.D. considered him his best friend, JA 61; JA 339, and he and his father reported to the school that everything was fine. JA 466.

---

[10] In considering the age of the alleged harasser and victim, *Oncale*, *supra*, courts must bear in mind that schools are unlike the adult workplace as children may regularly interact in a manner that would be unacceptable among adults. *Id.* at 651.

5. J.D. did not testify that he feared the interactions with M.O. Rather, he feared that if his classmates, parents, or the school found out about the alleged oral or anal sex acts with M.O., that they would think that he was gay. JA 202 ("I thought…they would think something else about me"). JA 484 ("[J.D]'s biggest fear was that [M.O.] would tell the whole school [J.D.] was gay.").

6. J.D. and M.O. communicated through text messaging about their sex acts in a non-threatening manner. JA 467. In one text, M.O. told J.D. that he **loved** him. JA 467. In another, M.O. asked J.D. whether he would **let M.O. do anything he wanted to J.D**. JA 467. Additionally, there were two texts from J.D. to M.O. in which J.D. asked M.O. if he would keep "this" a secret (the nature of the secret is unknown, but the obvious inference is that J.D. trusted M.O. enough that he considered him a confidant). JA 467.

For all of these reasons, a jury could not have reasonably concluded that interactions between J.D. and M.O. constituted severe or pervasive harassment.

### 2. <u>The District Court should have found that J.D. was not denied any educational opportunity.</u>

In *Davis*, *supra*, the Supreme Court held that public schools, as recipients of federal funds, can be liable under Title IX for student-on-student sexual harassment "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity

30

or benefit." *Id.* at 526 U.S. 633, 119 S. Ct. 1661; see also *Murrell v. School Dist. No.1*, 186 F.3d 1238, 1246 (l0th Cir. l999) (discussing the elements of a Title IX peer harassment claim under *Davis*).

The Supreme Court's holding in *Davis* expressly ties severity to deprivation under a single-element standard. Accordingly, no matter how sexually explicit or vulgar any language or gesture may be, it may not support a Title IX claim if Appellants cannot demonstrate a systemic effect of denying equal access to an educational program or activity. *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1285, 1288-89 (11th Cir. 2003) (despite the fact that Appellant suffered persistent and frequent harassment at the hands of another student over a period of several months, the harassment was not so severe, pervasive, and objectively offensive as to support Title IX claim because Appellees could not demonstrate a systemic effect of denying equal access to an educational program or activity).

The court in *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003), likewise relied on the same rationale that notwithstanding the harassment, the victim was not denied educational opportunities. In so holding, the *Gabrielle M.* court noted that examples of a negative impact on access to education may include a drop in grades, *Davis* at 526 U.S. 634, and becoming homebound or hospitalized due to harassment, see *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1248-49 (10th Cir. 1999). See also, *Hayut v. State University of New*

31

*York*, 352 F.3d 733 (2d Cir. 2003) (Plaintiff's inability to concentrate on her studies, poor attendance, and failing grades in all classes was enough to render the denial of educational opportunities an issue for the trier of fact).

In contrast, failure to establish denial of educational opportunities has resulted in the dismissal of Title IX claims. See, e.g., *Pahssen v. Merrill Community School Dist.*, 668 F.3d 356 (6th Cir. 2012) (holding that Plaintiff Jane Doe's brief failed to satisfy the first prong of the *Davis* test because it only identified incidents of obscene sexual requests and gestures and did not explain how the incidents deprived Jane Doe of access to educational resources).

In the case *sub judice*, the Court applied the *Davis* single-element standard and considered the multitude of Title IX cases in which severe and pervasive harm was tied to a deprivation of an educational opportunity. Despite reaching the conclusion that "[Appellants] have not shown that the harassment precluded JD from participating in, or benefiting from, a particular program or activity", JA 289, and that Appellees had proven that J.D. was not precluded from participating in any educational opportunity[11], accessing any room in the school[12] or receiving any

---

[11] J.D. was actively engaged in multiple school-sponsored activities and programs while enrolled at RGMS. Refer to Statement of Facts ¶22.

[12] The District Court properly noted that Plaintiffs could not maintain that M.O.'s harassment had a concrete, negative effect on J.D.'s ability to access the school restroom. Compare *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003) (citing *Davis*, 526 U.S. at 650-51) (holding that "physical exclusion

accommodation available to J.D. pursuant to his § 504 Plan,[13] JA 290, the District

Court stated that it was "unprepared to conclude that harassment that has no

tangible effect on a student's participation in a particular program or activity, but

that compels the child to withdraw from school, is unactionable under Title IX."

JA 290. In sum, although Appellants failed to meet their burden of persuasion,[14]

the District Court was unclear how to reconcile the issue of J.D.'s alleged

or denial of access to facilities" is a means by which Plaintiffs can demonstrate deprivation an educational opportunity). Although considered a compelling argument by the Court, Appellants did not submit sufficient evidence for a reasonable juror to reach such a conclusion because Appellants rested on a "rickety factual foundation. Assuming that forced sex acts took place in the bathroom ... the mere fact that [J.D.] went to the bathroom suggests that the prior acts did not stop him from using the bathroom." JA 289. "Additionally, although [J.D.] stated that he was afraid to enter the bathroom at the same time as Classmate, he testified that a nurse told him that he could use the bathroom in or near her office." JA 289-290.

[13] RGMS provided J.D. with educational services under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The purpose of Section 504 is to ensure that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. Appellees attended meetings throughout SY 2009 and SY 2010 with J.D.'s team of teachers, counselors and administrators and approved of the services that were set up to ensure that J.D. was not denied any educational benefits while at RGMS.

[14] Appellants showed that J.D.'s therapists diagnosed him with PTSD and noted a recurrence of encopresis, JA 289, but could not show how this psychological harm constituted a denial of an educational opportunity. See, i.e., *Gabrielle M.*, *supra.* (Although student was diagnosed with some psychological problems, student's grades remained steady and her absenteeism from school did not increase). Moreover, the record does not reflect, and Appellants do not allege, that J.D. manifested any behavior indicators at school that he was suffering from harassment, anxiety or encopresis, or that he reported to the Appellees that he feared M.O.

33

withdrawal from school at the end of a school year with the absence of evidentiary support showing a denial of access to a single educational service while enrolled at RGMS.

The District Court should have noted that Appellants did not withdraw J.D. *per se*—Appellants Jane and John Doe simply chose not to register to reenroll J.D. at RGMS for SY 2010/2011.  There is no dispute that J.D. **completed** SY 2010 at RGMS, had an excellent attendance and academic record, and has never testified that he wanted to withdraw from RGMS. Choosing not to reenroll a child in a school must be distinguished from being forced to withdraw prior to the end of a school year due to pervasive harassment or because the child makes such a request. To be sure, a forced withdrawal due to harassment denotes a mid-school-year physical deprivation of access to school resources, which courts have distinguished from other bases for "withdrawal." *Vance v. Spencer County Public School Dist.*, 231 F.3d 253, 256-57 (6th Cir. 2000) (harassed female student completed the school year from home due to depression); *Davis* at 526 U.S. 651 (student-on-student sexual harassment capable of triggering a damages claim would thus involve the overt, physical deprivation of access to school resources.); *Jennings* at 482 F.3d 718 ("It is not surprising that Jennings' argument on appeal focuses entirely on whether Dorrance's conduct was severe and pervasive", rather than on whether being cut from the soccer team was denial of an educational benefit, since

34

"Jennings' own evaluation of herself[was] that she was doing better [and she expected her Coach to say to her] 'You know, you've improved.'"). Moreover, the decision not to reenroll J.D. could not plausibly be linked to a fear of being harassed by M.O. for the following reasons:

1. In April 2010, J.D. considered M.O to be his best friend. JA 61; JA 339. After returning from spring break, J.D. reported to his therapist, Nancy Kendery, LCSW, that he was glad to be back in school and reported that school was fine. JA 466.

2. Appellee Schwab asked Appellants in April 2010 how J.D. was doing, and both J.D. and Appellant John Doe reported to her that "things were fine." JA 466. No other activities between J.D. and M.O at RGMS were known to the parent Appellants or the Appellees.

3. M.O. was a grade ahead of J.D. and had "aged out" of the RGMS Upper Elementary School, so withdrawal to avoid M.O. during SY 2010/2011 would not have been necessary.

For the reasons stated above, and because J.D. was not compelled to withdraw from RGMS, there is no basis to conclude that he suffered such severe and pervasive harassment so as to be denied any educational benefit.

## C. Appellees Were Not Deliberately Indifferent to Appellants' Complaints.

### 1. <u>Appellants failed to meet the "actual notice" requirement.</u>

A damages remedy under Title IX will not lie unless an official with authority to address discrimination has actual knowledge of the discrimination but fails to adequately respond. Congress did not intend to allow recovery in damages under Title IX where liability rests solely on principles of vicarious liability or constructive notice. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 118 S. Ct. 1989 (1998).  To be sure, a recipient of federal funds can only be liable where there is (1) adequate and express notice of the conduct or conditions at issue and (2) the recipient is able to ascertain what response is expected thereto. *Pennhurst State School and Hospital* v. *Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981).

A damages remedy will not lie unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination and fails adequately to respond. *Id.* Express notice embraces not only knowledge but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated.  *City of Baltimore v. Whittington*, 78 Md. 231, 27 A. 984, 985 (1893).

Appellants allege that they first notified Ms. Jellison and Principal Johnson of J.D.'s complaints of bullying and sexually explicit comments as early as October 2008. However, this allegation does not comport with the reports kept by either Jellision, Appellee Schwab, (Refer to Statement of Facts ¶14), and J.D.'s therapist, Nancy Kendery, LCSW. JA 466. Kendery noted that her sessions with J.D. during that time had little or nothing do with school. JA 466 ("On a note from October 27, 2008 [J.D.] named 10 friends. On November 18, [Kendery's] note reported that [J.D.] said school was going well. Moreover, he had not wanted to leave school to come to the therapy session."). Further, J.D. never told his therapist about any alleged incident of bullying or harassment and believed he was in therapy with Kendery only to address his anger management problems. JA 470.

There are only two entries in Ms. Jellison's Communication Log stemming from incidents in 2008. (Refer to Statement of Facts ¶14). Neither of these entries mentions that the reported behavior was sexual in nature.

Thereafter, it was not until March 12, 2009 that Appellant John Doe contacted Ms. Jellison regarding M.O. making "sexual remarks and gestures." (Refer to Statement of Facts ¶14). This was the only report ever made by the Appellants regarding M.O.'s "sexual remarks and gestures." There were no other corroborated reports from SY 2009, and no reports specifying physical contact between J.D. and M.O., let alone reports of M.O. engaging in physical contact with

37

any other students. As will be addressed in § C.2., *infra*, although Appellants allege that the Appellees should have known that J.D. would allegedly suffer from future harm, this does not establish either "actual notice" or "deliberate indifference." *Davis*, *supra.*

The next report was made on December 7, 2009, over four months after SY 2010 had begun. J.D. reported to Assistant Principal Deatrice Womack that, on December 4, 2009, before lunch, "I was in the bathroom and M.O. ran in half naked and I ran in the stall and he tryd [sic] to clime [sic] over it and clime [sic] over it and I cralld [sic] under it and I ran and he said come here." The report did not indicate physical touching or abuse. JA 353. The incident was investigated. On December 7, 2009, Appellant John Doe came to the school and reviewed video footage of the bathroom entrance before lunch on December 4, 2009 with Security Officer Pfiel. Together, neither Officer Pfiel nor Appellant John Doe discovered any footage of M.O. entering the school bathroom after J.D., let alone entering the bathroom half-naked. JA 344. Ultimately, the investigation revealed that J.D. had been in the bathroom after recess, and had assaulted another male student. (Refer to Statement of Facts ¶18).

There were no other incidents reported by Appellants or J.D. during SY 2010, so J.D.'s fifth grade year ended with Appellees receiving only a single report of unwanted sexual attention from M.O., which did not mention assault, abuse, or

any physical touching. However, all reports that Appellants made to RGMS teachers and administrators were investigated in accordance with AP 4170 and AP 10101.

Since AP 4170 provides that sexual harassment may include, "unwanted sexual attention on a continuing and pervasive basis from peers…where the individual's responses are restrained by fear of reprisals.", one report of "sexual remarks and gestures," unsubstantiated by proof that the harassment was on a continuing and pervasive basis, does not rise to the level of sexual harassment or discrimination sufficient to put Appellees on actual notice of a Title IX violation. *City of Baltimore*, *supra*.

### 2.  <u>Appellees' response is not one of deliberate indifference.</u>

A private damages action may lie against a school board in cases of student-on-student harassment, but only where the funding recipient acts with deliberate indifference to ***known***[15] acts of harassment in its programs or activities. *Davis* at 633. To be sure, if a funding recipient does not engage directly in harassment, it

---

[15] The *Davis* Court "declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known. Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge" *Davis* at 642 (citing *Gebser* at 290, 118 S. Ct. 1989). Even if this Court were to consider changing the heightened standard for actual knowledge under Title IX, the facts in this case do not show a violation of Appellants' "should have known" standard for reasons stated in § C.1., *infra*.

may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. *Davis* at 644-645. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"). As long as school administrators do not respond to reports of sexual harassment with deliberate indifference, courts should refrain from second-guessing the disciplinary decisions made by school administrators. *New Jersey v. T.L.O.*, 469 U.S. 325, 342, n. 9, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). If an institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment. *Gebser*, *supra*, 524 U.S. 274, 118 S. Ct. 1989, 1999 (1998).

Recently the Eleventh Circuit Court of Appeals addressed the tragic case of a student who, faced with what his family claimed to be pervasive school-based bullying due to his disability, eventually took his own life. Affirming the lower court's award of summary judgment in a Section 504 and ADA lawsuit that arose out of this tragedy, the Court found that while "on hindsight the Defendants should have done more to address disability harassment, Plaintiffs failed to meet the high bar of deliberate indifference and [have failed to] demonstrate that Defendants' response was clearly unreasonable. We agree with the district court that the

evidence shows a pattern on the part of Defendants of responding promptly to reported incidents, and we agree that Plaintiffs have failed to adduce evidence that would permit a jury to reasonably find 'that Defendants' disciplinary responses to the reported harassment incidents were clearly unreasonabl[e].'"  *Long v. Murray County School District*, 522 Fed. Appx. 576 (11th Cir. 2013).  In Long, as in the instant case, the student went through months at a time without any reported incidents, and when there were such reports, "the evidence shows that the Defendants diligently investigated each reported incident and, when they could identify the harasser, disciplined offenders based on the severity of the incident and the accused's disciplinary history."  *Long v. Murray County School District*, 2012 WL 2277836 (N.D. Ga. 2012), at * 36.

Taking "timely and reasonable measures" under Title IX does not mean that a school has to take extreme measures to remedy alleged harassment, nor does it have to respond to the demands of a complaining student's parents. Student victims of peer harassment do not have a Title IX right to make particular remedial demands. See *Davis* at 169l (contemplating that victim could demand new desk assignment). The *Davis* court opined that it could not agree with respondents' contention that, if Title IX provides a cause of action for student-on-student harassment, "nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or

41

damages." *Id.* at 648. Instead, the *Davis* court held that "school administrators will continue to enjoy the flexibility they require and will be deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."

There is no requirement to "remedy" peer harassment or to "ensur[e] that…students conform their conduct to" certain rules. *Davis* at 665. On the contrary, the recipient must merely respond to known peer harassment in a manner that is not "clearly unreasonable." *Id.* at 649. In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a particular response as not "clearly unreasonable" as a matter of law, which is precisely what the District Court did here.

In the instant matter, Appellee Schwab's responses to all of Appellants' and J.D.'s complaints were clearly reasonable. Appellee Schwab never referred Appellant or J.D. to a third party without first addressing an issue herself or referring the matter to Principal Johnson. When one approach- such as speaking to both students-was determined to be ineffective, she consistently took further steps that went well beyond repeated verbal or written warnings. The following is the series of escalating steps taken by Appellees in compliance with AP 4071 and AP 10101:

42

1. Appellee Schwab spoke with Ms. Jellison, J.D. and Appellees Jane and John Doe. Refer to Statement of Facts ¶¶14,18.

2. Appellee Schwab rearranged Ms. Jellison's classroom and reassigned seats so that J.D. and M.O. were away from each other. Refer to Statement of Facts ¶14.

3. Principal Johnson called M.O.'s parents again, and placed M.O. on behavioral probation. Refer to Statement of Facts ¶14.

4. Principal Johnson gave M.O. one week of in-school suspension, which was served in Johnson's office. Refer to Statement of Facts ¶14.

5. Appellee Schwab investigated allegations of bathroom intimidation by interviewing students and examining security footage, and permitted Appellant John Doe to view security footage as well. Refer to Statement of Facts ¶18.

6. Appellee Schwab prohibited J.D. and M.O. from being in a school bathroom at the same time or leaving their classroom at the same time. Refer to Statement of Facts ¶18.

7. Appellee Schwab implemented policies and procedures to ensure J.D.'s safety, including classroom log books, a personal bathroom escort system for J.D., and giving J.D. permission to use the school nurse's bathroom. Refer to Statement of Facts ¶18.

Even in a light most favorable to Appellants, the District Court properly held that the series of escalating steps taken by Appellees do not rise to the level of deliberate indifference. In fact, Appellees contacted both J.D. and Appellant John Doe in April 2010 to see whether these steps had remedied the alleged harassment, and both J.D. and Appellant John Doe indicated that the harassment had ended. Though under Title IX Appellees' responses were not required to have completely remedied the problem, Appellants themselves noted that the remedies were successful. Thus, as a matter of law, Appellees cannot be held liable for having <u>caused</u> J.D.'s alleged discrimination, since their responses to J.D.'s complaints never rose to the level of deliberate indifference.

Nevertheless, Appellants *contend* that "At no point during the two school years in which J.D. and his parents complained about M.O.'s harassment did school officials conduct a meaningful investigation into the allegations." Appellants improperly attempt to substantiate their claim on the report of their expert witness, Susan Strauss, whose unsworn and unsigned expert report was rejected by the District Court as inadmissible for purposes of summary judgment. *Edens v. Kennedy*, 112 F. App'x 870, 879 (4th Cir. 2004).

The District Court also noted significant substantive deficiencies in Strauss's report that that led the Court to conclude that her report was not "based on sufficient facts." JA 303; *See* Maryland Rules of Evidence 5-702 ("Expert

44

testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (3) whether a sufficient factual basis exists to support the expert testimony.").   First, the District Court found that Strauss completed her report before depositions had been taken, and before the majority of the Appellees' over 1800-page discovery production had been supplemented. As a result, Strauss had never reviewed any of M.O.'s Pupil Discipline Referral Forms (PS-74s) or Student Behavior Reflection Sheets that were prepared by the Appellees during SY 2009 and SY 2010, JA 440, or the deposition testimony of Appellee Schwab. JA 669 ("for [J.D.] we have also documented multilayered interventions and supports to help him be successful during the two years that he was at our school").

Additionally, Strauss's report offered the sweeping conclusion that Appellees' "failure to follow various administrative procedures and protocol in response to Plaintiffs' complaints was improper."   JA 303.   In reaching that conclusion, Strauss proffered that Appellees "should have known" that sexual harassment occurred and that only "prompt and effective actions to intervene…stop the hostile environment…and…prevent a recurrence" would have been a response compliant with Title IX.   JA 426. Strauss also noted that "in my experience, if there is no documentation or inadequate documentation, there was

45

no sexual harassment investigation." JA 430.  This conclusion was also properly disregarded by the District Court because it was premised on an erroneously heightened compliance standard.  Title IX does not require that interventions stop harassment or prevent recurrence; rather, Title IX merely requires that responses to known complaints of harassment must not be "clearly unreasonable."  Moreover, following *Gebser* and *Davis*, courts have not applied a "should have known" standard to Title IX claims.  *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S. Ct. 1028 (1992).

Strauss heavily relied on OCR's Title IX guidelines in establishing her opinion, even though OCR guidelines are not afforded deference under the law because they are policies and not legal standards. See *Rowinsky v. Bryan Independent School Dist.*, 80 F.3d 1006, 1014 (5th Cir. 1996) (As a legislative regulation, the implementing regulations found at 59 C.F.R. § 106 are accorded far greater deference than are interpretive regulations such as [OCR] Letters of Finding); See also *Vance*, *supra*.  Moreover, Strauss's opinion is regarded not as a commentary about compliance with the current legal standard, but a commentary about establishing stricter policies in the future.  According to 141 A.L.R. Fed. 407, RIGHT OF ACTION UNDER TITLE IX OF EDUCATION AMENDMENTS ACT OF 1972 (20 U.S.C.A. §§ 1681 ET SEQ.) AGAINST SCHOOL OR SCHOOL DISTRICT FOR SEXUAL HARASSMENT OF STUDENT BY STUDENT'S PEER, "An educational consultant, Susan

Strauss, has opined that ***policies should include***: a statement that harassment is wrong and will not be tolerated; a definition listing forms of sexual harassment; the punishment to be meted out to harassers; grievance procedures; training programs; and an annual review process for the policy."  141 A.L.R. Fed. 407 (emphasis added).

Strauss's proposed policies, if applied, would result in a total disregard of the rights of accused harassers and would remove Appellees' authority to discipline harassers by considering the "constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the harasser's and victim's ages." *Oncale*, *supra;* see also *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 677 (10th Cir. 1998) ("The courts, however, must balance the victim's rights, the employer's rights, and the alleged harasser's rights. If our rule were to call for excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination.")

Taking Strauss's policy opinion to its logical end, students like M.O. (who was recommended for a School Instructional Team referral to address his behavior, JA 367), or students whose harassment stemmed from a manifestation of a disability, would equally be punished for alleged harassment without consideration of their due process rights or individual mitigating circumstances, just when public schools are finally backing away from the one-size-fits-all of "zero tolerance"

policies. See *Ratner v. Loudon County Public Schools*, 16 Fed. Appx. 140 (4th Cir. 2001), *cert. denied*, 534 U.S. 1114 (2002) (severely criticizing a zero tolerance policy that resulted in the unfair penalization of a student who removed a knife from another student's backpack in order to prevent a possible suicide, only to be punished under the policy for possessing a weapon in school). Since Strauss has not applied the appropriate legal standard in reaching her conclusion about Appellees' Title IX compliance, the District Court was proper to disregard it as inadmissible.

## II.   Negligence Claims

### Appellees Can Not be Liable for a Breach of Duty to Investigate Complaints of Harassment and Protect J.D.

In Maryland, a properly pleaded claim of negligence includes four elements. The Appellant must allege, "(1) that the Appellee was under a duty to protect the Appellant from injury, (2) that the Appellee breached that duty, (3) that the Appellant suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the Appellee's breach of the duty." *Valentine v. On Target, Inc.*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (quoting *BG&E v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995)).

Maryland courts have defined "duty" in a negligence claim as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Ashburn v. Anne Arundel County*,

306 Md. 617, 627, 510 A.2d 1078, 1083 (1986).   Appellants allege in their Complaint that the Appellees owed J.D. "a duty to protect him from harm" and owed the parent Appellants a duty "to investigate the allegations [that their son was being harassed at school and] implement protection necessary to keep J.D. safe." JA 15.  The District Court accepted Appellants' argument that the Appellees had a duty to protect J.D. from the tortious acts of third parties. JA 300 (citing See *Lunsford v. Bd. of Educ. of Prince George's Cnty.*, 374 A.2d 1162, 1168 (Md. 1977)), but refrained from addressing whether the Appellees had a duty to investigate as well.   Instead, the Court relied on the adequacy of Appellees' investigatory response in holding that Appellees had not breached their duty to protect.   JA 300-301.   However, this analysis squarely places the focus of Appellants' allegations not on whether or not J.D. had been sufficiently "protected", but rather, whether Appellees' investigation was adequate to protect J.D. from harm.

Accordingly, Appellants' claim for negligence against the Board amounts to nothing more than an attempt to hold the Board liable for a variation of "educational malpractice," which is not a recognized tort in Maryland.  See *Hunter v. Board of Education of Montgomery County*, 292 Md. 481, 484, 439 A.2d 582, 585 (1982) ("[A] cause of action seeking damages for acts of negligence in the educational process is precluded by considerations of public policy."); see also

*N.T. v. Balt. City Bd. of Sch. Com'rs*, No. JKB-11-356, 2011 WL 3747751, at *8 (D. Md. Aug. 23, 2011) ("[T]he *Hunter* opinion is broadly written to embrace any claim of educational malpractice, whether it involves a complaint of negligent evaluation of a child's learning abilities or some other kind of negligence."). In *Hunter*, the Court of Appeals reasoned that to impose a tort duty on educators for their delivery of educational services and the implementation of internal policies "would in effect position the courts of this State as overseers of both the day-to-day operation of our educational process as well as the formulation of its governing policies…a responsibility we are loathe to impose on our courts." *Hunter*, 292 Md. at 487-88.

Applying *Hunter*, Appellants are precluded from seeking damages for alleged acts of negligence in the delivery and implementation of AP 4170, which provides grievance and investigatory procedures for student complaints of discrimination, harassment, bias or extremism. However, even if Appellants were not precluded from seeking damages, the District Court was correct in finding that there was no breach of a duty to protect or investigate. For the Court to have found a breach, there must have been an <u>inadequate</u> response from Appellee Schwab, one that appeared "clearly unreasonable" as a matter of law. *Davis*, 526 U.S. at 649. To the contrary, the responses to Appellants' complaints by Appellee Schwab were not only numerous but also effective. Statement of Facts pp. 12-13; see also *supra*

50

§ I.C.(2) pp. 33-34. Further, after the December 7, 2009 report, there were no other complaints made by Appellants. In fact, J.D. and his father reported in April 2010 that everything was fine. JA 466.

Alternatively, if this matter had presented a situation where a "special" or custodial relationship gave rise to a constitutional duty on the part of the school to protect a student victim from a deprivation of Due Process rights, a further inquiry into Appellants' negligence and gross negligence claims would be necessary.[16] However, because Appellants fail to allege a Due Process violation and fail to prove a special relationship existed between J.D. and Appellee Schwab, no further inquiry is necessary. To be sure, even if a special relationship did exist under *Pinder*, Appellants fail to prove that Appellee Schwab engaged in any affirmative

---

[16] Commonly referred to as the "special relationship" exception, the exception arises when an individual and the State have a special relationship such that the State has an affirmative duty to protect the individual from harm inflicted by third parties. This "special relationship" exception arises in a custodial context because "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. of Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); see also *Waybright v. Frederick Cnty.*, 528 F.3d 199, 207 (4th Cir. 2008) (A "special relationship is all but synonymous with a custodial relationship.") (internal citations and quotations omitted). As the *DeShaney* court noted, "[i]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200; see also *Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc) ("Some sort of confinement of the injured party—incarceration, institutionalization, or the like—is needed to trigger the affirmative duty.").

conduct that placed J.D. in danger.  In *DeShaney*, the Supreme Court held that

"[w]hile the State may have been aware of the dangers that [the child] faced in the

free world, it played no part in their creation, nor did it do anything to render him

any more vulnerable to them." *DeShaney*, 489 U.S. at 201. The Court ultimately

upheld the dismissal of the complaint because it failed to allege "affirmative

actions by the Appellees that created or increased the danger to the victims." *Id*.

Here, Appellees fail to offer any evidence that Appellee Schwab's actions created

or increased the danger to J.D.  Statement of Facts pp. 12-13; see also *supra*

§ I.C.(2) pp. 33-34. It is clear that Appellee Schwab took actions in accordance

with AP 4170 to investigate, report, and prevent bullying and/or intimidation

whenever it was reported.  Statement of Facts pp. 12-13; see also *supra* § I.C.(2)

pp. 33-34.  Further, none of the reports made by Appellants suggest that M.O.'s

behavior had worsened; in fact, as noted previously in this section, J.D. and

Appellant John Doe reported in April 2010 that everything was fine.  JA 466.

Accordingly, because *Hunter* ultimately precludes Appellants from

establishing that Appellees had a tort duty regarding the implementation of AP

4170, and because Appellees' responses to Appellants' complaints were not clearly

unreasonable under *Davis*, the District Court was correct in holding that Appellants could not prove their negligence claim.[17]

Since Appellants' simple negligence claim fails, so too fails the claim of gross negligence, which contemplates a heightened standard of care and an intentional breach thereto. "Gross negligence connotes 'wanton and reckless disregard for others.'" *Markevicz v. Garcia*, Civil Action No. 8:08-cv-02877-AW, 2011WL6888641, at *2 (D. Md. Dec. 29, 2011) (quoting *Boyer v. State*, 594 A.2d 121, 132 (Md. 1991)). "A defendant acts with wanton and reckless disregard for others 'only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Id.* (emphasis added) (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)). Accordingly, the District Court properly noted that "no reasonable juror could conclude that Defendants intentionally inflicted JD's injury or acted as if JD's rights did not

---

[17] The District Court continued its analysis into the causation element of Appellants' negligence claim and found as a matter of law that "no reasonable juror could conclude that [J.D.'s] injuries would not have occurred but for [Appellees'] alleged inaction. There is no indication that Classmate would not have continued to harass [J.D.] had Defendants done more to protect him. Short of expulsion, it is unclear what more Defendants could have done to control Classmate's behavior, and [J.D.] rejected measures designed to protect him from Classmate's alleged harassment in the bathroom." JA 304-305. The Appellees agree with the District Court's analysis and further contend that both the causation-in-fact and legally cognizable cause of J.D.'s injuries was the conduct of M.O. and the Appellants. See discussion *infra* § III; See *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009) ("Under Maryland law, proximate cause has two separate requirements. It must be both a 'cause in fact' and 'a legally cognizable cause.").

exist. Plaintiffs have not proceeded under the theory that Defendants intentionally inflicted JD's injury and, even had they, their evidence would be insufficient to support such a conclusion." JA 299.

## III.    Contributory Negligence

Alternatively, Appellees' negligence and gross negligence claims fail as a matter of law because they are barred under the doctrine of contributory negligence. Contributory negligence is a complete bar to tort recovery in Maryland. *Prudential Sec. Inc. v. E-Net, Inc.*, 140 Md. App. 194, 226, 780 A.2d 359, 377 (2001). While "primary negligence involves a breach of duty owed to another, contributory negligence involves a failure to take proper precautions for one's own safety." *Baltimore County v. State, Use of Keenan*, 232 Md. 350, 362, 193 A2d 30, 37 (1963). "Contributory negligence ... is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Potts v. Armour & Co.*, 183 Md. 483, 490, 39 A.2d 552, 556 (1944). See also, *Duncan v. U.S.*, 2011 WL 2746291 (D.Md. 2011) (citing *Menish v. Polinger* Co., 277 Md. 553, 559 (1976)).

Maryland Courts have consistently held that a child aged 5 or older may be guilty of contributory negligence. *Taylor v. Armiger*, 277 Md. 638, 358 A.2d 883 (1976); *Brown v. Rogers*, 19 Md. App. 562, 313 A.2d 547 (1974); *Dawson v.

*Christopher*, 258 Md. 413, 419, 265 A.2d 906 (1970); *Billings v. Shaw*, 247 Md. 335, 231 A.2d 12 (1967); *Oddis v. Greene*, 11 Md. App. 153, 273 A.2d 232 (1971).

"At age 5 or older, the issue is analyzed in terms of the evidence as to the child's age, experience, and training to show the level of knowledge of the risks associated with the conduct in question." *Kritsings v. State Farm Mut. Auto. Ins. Co.*, 189 Md. App. 367, 384, 984 A.2d 395, 405 (2009); *Slaysman v.Gerst*, 159 Md. 292, 150 A. 728 (1930).  In order to withdraw a case from the jury on the ground of contributory negligence, reasonable minds must not differ that there was some decisive act on the part of the Appellant which directly contributed to the cause of the accident. *Pratt v. Coleman*, 14 Md. App. 76, 286 A.2d 209 (1972).

Though J.D. was only ten years old at the time of the alleged harassment, Appellants deemed J.D. responsible enough to have a cell phone for his own personal use. JA 483. This action is significant in so far as the triggering incident that brought about this suit was Appellants' viewing of a series of text messages and pictures allegedly sent by M.O. to J.D.'s phone,[18] even though the use of

---

[18] While Appellants Jane and John Doe viewed the text message and pictures that had been sent and received from J.D.'s phone, J.D. did not see the messages and pictures because his parents had confiscated his phone for engaging in inappropriate communications with M.O. late in the evenings without his parents' permission.  JA 363. The Court further noted that the existence and nature of those communications were never reported to Appellee Schwab or any other Board employee.  JA 281.

cellular phones was not permitted at RGMS. In fact, while AP 10101 recognizes that communications constituting bullying and intimidation can be "transmitted by means of an electronic device, including but not limited to a telephone, cellular phone, computer, or pager", JA 130, AP 10101 clearly states that "Unauthorized Use of Electronic Devices" is Level II Misconduct which can result in a multitude of disciplinary responses, including but not limited to confiscation of the device or in-school suspension. JA 147. Thus, although Appellees had enacted policies to specifically prevent the type of intimidation of which Appellees allege their child is a victim, J.D.'s parents had not. Appellants' expert, Dr. Joan Kinlan, reported the following:

> "His mother checked on the phone usage and noticed [M.O.] was on his contact list. [J.D.]'s parents took his cell phone away a couple of times when they felt he was using it inappropriately and texting late at night. From early June of 2010, his mother had the phone. Mom checked his messages the last day of school (June 16, 2009[sic]) and found a message from [M.O.] describing how it was so great what we did with an explicit description of sexual activity and a comment not to tell your parents. There were also voice messages from [M.O.]. His parents asked [J.D.] about them and [J.D.] initially denied anything had happened."

JA 483.

The record provides ample evidence that it was Appellants who allowed J.D. unfettered access to his own cellular phone. It was also Appellants — not the Appellees—who assumed the responsibility of protecting J.D. from what they believed were sexually harassing texts and voice messages. JA 483; JA 363.

56

Appellants' argument that J.D. feared M.O. is undercut by the fact that J.D. repeatedly engaged in sexual communications with M.O. and broke his parents' rule not to communicate with his alleged assailant. See generally, *Potts v. Armour & Co.*, 183 Md. 483, 490, 39 A.2d 552, 556 (1944).

J.D. also failed to follow the instructions of RGMS school officials. J.D. repeatedly failed to follow Appellees' instruction to timely notify the Appellees of the alleged harassment. JA 324; JA 368. Appellants have never argued that J.D. did not have the ability or willingness to follow those instructions.

Finally, J.D. is contributorily negligent for requesting to discontinue the bathroom escort that was assigned to him to prevent any further physical contact in the school bathroom, and for continuing to use the same bathroom even though the school nurse told him that he could use the bathroom in or near her office. JA 305. The District Court noted "it is unclear what more [Appellees] could have done to control Classmate's behavior, and J.D. rejected measures designed to protect him from Classmate's alleged harassment in the bathroom." JA 305. The District Court was correct in its assessment and properly found J.D. contributorily negligent as a matter of law.

## **CONCLUSION**

For the foregoing reasons, and as a matter of law, the District Court properly granted Appellees' Motion for Summary Judgment as to Appellants' Title IX, gross negligence, and negligence claims.  Accordingly, this Court should affirm judgment for Appellees.

Respectfully submitted,

/s/ Abbey G. Hairston
Abbey G. Hairston
Shana R. Ginsburg
THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, MD 20770
Telephone: (301) 441-1400
Facsimile: (301) 441-9602
agh@thatcherlaw.com
srg@thatcherlaw.com
www.thatcherlaw.com

*Counsel for Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*13,509*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 28, 2014</u>          <u>/s/ Abbey G. Hairston</u>
                                    *Counsel for Appellees*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 28th day of May, 2014, I caused this Brief of

Appellees to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> Laura G. Abelson
> Andrew D. Freeman
> Sharon M. Krevor-Weisbaum
> BROWN, GOLDSTEIN & LEVY, LLP
> 120 East Baltimore Street, Suite 1700
> Baltimore, Maryland 21202
> (410) 962-1030
>
> *Counsel for Appellants*

I further certify that on this 28th day of May, 2014, I caused the required

copies of the Brief of Appellees to be hand filed with the Clerk of the Court.

> /s/ Abbey G. Hairston
> *Counsel for Appellees*