NO. 13-2537

In The
United States Court Of Appeals
For The Fourth Circuit

**JOHN DOE AND JANE DOE,**
**individually and as next friends of J.D., a minor child,**

**Plaintiffs-Appellants,**

**v.**

**THE BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY**
**AND KATHLEEN SCHWAB,**

**Defendants-Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
———————————————

**REPLY BRIEF OF APPELLANTS**
———————————————

Sharon Krevor-Weisbaum
Andrew D. Freeman
Laura Ginsberg Abelson
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone: (410) 962-1030
Facsimile: (410) 385-0869
skw@browngold.com
adf@browngold.com
labelson@browngold.com

*Attorneys for Appellants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION .................................................................................1

ARGUMENT ....................................................................................3

    I.    By breaching the long-recognized "special duty" that schools have under Maryland law to exercise reasonable care to protect their students from harm, the District acted negligently. ......................3

        A.    The District ignores or misrepresents the factual bases for the Does' claims. ........................................................3

        B.    The District's duty under Maryland negligence law required that it properly investigate J.D.'s complaints of harassment. ...............................................................5

        C.    No heightened Title IX or constitutional standard applies to the Does' negligence claim. ...................................8

        D.    The fact that the Does provided J.D. a cell phone is not a basis for a finding of contributory negligence because use of the cell phone did not contribute to J.D.'s injury. .................9

    II.    A reasonable jury could find that the District discriminated against J.D. on the basis of his sex, under Title IX. ...........................10

        A.    The Does have not alleged a claim of sexual orientation discrimination based on name calling. ......................................10

        B.    The district court properly concluded that the facts, taken in the light most favorable to the Does, demonstrate that J.D. was denied educational opportunities based on the sexual harassment he suffered. .................................11

            i.    The harassment J.D. suffered was severe, pervasive, and objectively offensive. .............................11

            ii.    J.D. was denied access to educational opportunities. ................................................14

i

C.    The district court should have held that a reasonable jury could find that RGMS officials acted with deliberate indifference toward the harassment J.D. suffered. ...................17

i.    The district court properly concluded that a reasonable juror could find that RGMS officials had actual notice of M.O.'s harassment of J.D. .............17

ii.    A reasonable juror could conclude that the District's responses to J.D.'s harassment were clearly unreasonable in light of the known circumstances...................................................................19

a.    The District's failure to follow accepted standards for addressing sexual harassment complaints is evidence of its deliberate indifference............................................................20

b.    A fact finder could conclude that the District's actions were not reasonably calculated to be effective in preventing M.O.'s harassment of J.D. ....................................24

CONCLUSION........................................................................................26

CERTIFICATE OF COMPLIANCE....................................................27

CERTIFICATE OF SERVICE .............................................................28

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................19

*Ashburn v. Anne Arundel Cnty.*,
    306 Md. 617 (1986) ...................................................................................5

*Bauman v. Woodfield*,
    244 Md. 207 (1966) ...................................................................................5

*Briggs v. Cochran*,
    202 F.3d 257 (4th Cir. 1999) .....................................................................23

*Brown v. Rogers*,
    19 Md. App. 562 (1974) ............................................................................9

*Bruning v. Carroll Cnty. Sch. Dist.*,
    486 F. Supp. 2d 892 (N.D. Iowa 2007) .....................................................14

*Crickenberger v. Hyundai Motor Am.*,
    404 Md. 37 (2008) ....................................................................................23

*Crinkley v. Holiday Inns, Inc.*,
    844 F.2d 156 (4th Cir. 1988) .....................................................................23

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)............................................................................ passim

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989)...................................................................................8

*Doe v. Derby Bd. of Educ.*,
    451 F. Supp. 2d 438 (D. Conn. 2006) .......................................................14

*Eagle-Picher Indus., Inc. v. Balbos*,
    326 Md. 179 (1992) ..................................................................................23

*Fitzgerald v. Manning*,
    679 F.2d 341 (4th Cir. 1982) .....................................................................23

*Harrison v. Harrison*,
    264 Md. 184 (1972) ...................................................................................5

*Hill v. Wilson*,
    134 Md. App. 472 (2000) .........................................................................9

*Hunter v. Bd. of Educ. of Montgomery Cnty.*,
    292 Md. 481 (1982) ...................................................................................6

*Int'l Brotherhood of Teamsters v. Willis Corroon Corp.*,
    369 Md. 724 (2002) ...................................................................................9

*K.M. v. Hyde Park Cent. Sch. Dist.*,
    381 F. Supp. 2d 343 (S.D.N.Y. 2005) ................................................ 14, 18

*Lunsford v. Bd. of Educ.*,
    280 Md. 665 (1977) ............................................................... 2, 5, 6, 8

*M.D. v. Sch. Bd. of City of Richmond*,
    2014 WL 929342, *3 (4th Cir. March 11, 2014) .........................................11

*Montgomery v. Indep. Sch. Dist. No. 709*,
    109 F. Supp. 2d 1081 (D. Minn. 2000) .......................................................14

*Moodie v. Santoni*,
    292 Md. 582 (1982) ...................................................................................9

*Onacle v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)...................................................................................11

*Remsburg v. Montgomery*,
    376 Md. 568 (2003) ...................................................................................5

*Rite Aid Corp. v. Levy-Gray*,
    162 Md. App. 673 (2005) *aff'd*, 391 Md. 608 (2006)...................................23

*Rohrbough v. Wyeth Labs., Inc.*,
    916 F.2d 970 (4th Cir. 1990) .....................................................................23

*Sav-A-Stop Servs., Inc. v. Leonard*,
    44 Md. App. 594 (1981) .............................................................................5

*Seiwert v. Spencer-Owen Cmty. Sch. Corp.*,
    497 F. Supp. 2d 942 (S.D. Ind. 2007)............................................................14

*Snelling v. Fall Mountain Reg'l Sch. Dist.*,
    CIV. 99-448-JD, 2001 WL 276975 (D.N.H. Mar. 21, 2001).......................16

*Tennant v. Shoppers Food Warehouse Md. Corp.*,
    115 Md. App. 381 (1997) ...............................................................................5

*Theno v. Tonganoxie Unified Sch. Dist No. 464*,
    377 F. Supp. 2d 952 (D. Kan. 2005) ...................................................... 14, 16

*Todd v. Mass Transit Admin.*,
    373 Md. 149 (2003) .........................................................................................5

*Valentine v. On Target, Inc.*,
    353 Md. 544 (1999) .........................................................................................5

*Vance v. Spencer Cnty. Pub. Sch. Dist.*,
    231 F.3d 253 (6th Cir. 2000) ......................................................... 14, 19, 25

**Statutes**

20 U.S.C. § 1681 ................................................................................... passim

29 U.S.C. § 701 ...............................................................................................2

**Rules**

Fed. R. Evid. 702 .........................................................................................23

**Other Authorities**

Russlynn Ali, Letter to Francisco Negron (March 25, 2011),
    http://www.nsba.org/sites/default/files/reports/ED_Response_-
    _NSBA_Bullying_Letter_2011.pdf (last visited June 23, 2014) .................22

## **Introduction**

Appellees seek to gut all meaning of the duties imposed under Maryland negligence law and Title IX on school districts and administrators, beginning their brief with this statement:

> [T]here is no duty to properly investigate and intervene to stop a known pattern of sexual harassment.

Appellees' Br. 2 n.1. This statement is both morally outrageous and legally erroneous. To affirm the district court's decision would send the message to school districts that the District's statement is correct – that schools are not required to take <u>any</u> steps reasonably calculated to protect their students from known risks to the students' physical and emotional safety.

The Board of Education and Ms. Schwab (collectively "the District") disregard the requirement that, on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Of the more than ten instances of reported sexual harassment listed on pages 7-8 of the Does' brief, the District completely ignores all but three, then argues that those three do not form a pattern. In the light most favorable to the Does, however, a jury could conclude that the District had notice of an escalating pattern of sexual harassment and failed to take action that was reasonably calculated to prevent future harm.

The District also fundamentally misunderstands and misrepresents the Does' theory of the case. The Does contend that Robert Goddard Montessori School

1

("RGMS") officials knew that M.O. was sexually harassing and bullying J.D., yet failed to reasonably investigate J.D.'s complaints and to take action reasonably calculated to separate the two boys and prevent future harassment, thereby allowing J.D. to be sexually assaulted on a number of occasions.  Contrary to the District's arguments, the Does *do not* contend that J.D. was harassed because of his sexual orientation.  The Does *do not* contend that J.D. suffered any independent harm from the explicit text messages M.O. sent him – he never saw them.  The Does *do not* contend that J.D. was denied disability accommodations under Section 504 of the Rehabilitation Act.  The Does *do not* allege a violation of J.D.'s constitutional rights under § 1983.   The Does *do not* allege negligence based on a pedagogical decision that would amount to educational malpractice.  The District set up these straw men just to shoot them down and distract from the Does' actual claims, that RGMS officials knew that M.O. was sexually harassing J.D. and took no steps reasonably calculated to stop the harassment, thereby violating the well-recognized duties they had to protect him from harm under *Lunsford v. Board of Education of Prince George's County* and Title IX.

The evidence demonstrates that in the 2008 and 2009 school years RGMS officials knew that M.O. was subjecting J.D. to an increasingly serious pattern of sexual harassment, yet they failed to take any action in response to most of J.D.'s complaints and the few actions they took were not reasonably calculated to stop the

2

harassment.  School officials knew that name calling had escalated to indecent exposure, then to unwanted touching, and further to sexual assault.  Yet, what few steps they took left J.D. vulnerable because the District failed to follow through (as when it promised to put M.O. on behavioral probation) or left glaring gaps through which M.O. continued to have the opportunity to harass and assault J.D. (as with the sign-in/sign-out book).  Further, school officials failed to reasonably investigate J.D.'s complaints and were deliberately indifferent to the pattern of harassment.

<u>**Argument**</u>

I.    **By breaching the long-recognized "special duty" that schools have under Maryland law to exercise reasonable care to protect their students from harm, the District acted negligently.**

   A.    **The District ignores or misrepresents the factual bases for the Does' claims.**

   In their opening brief, the Does set forth more than ten instances from which a juror could conclude, based on the testimony of *the District's witnesses* or documents created by them, that the District knew about the escalating pattern of sexual harassment M.O. perpetrated against J.D.  Appellants' Br. 7-8.  These include:

   1)    Sex-based name calling that began in October 2008, J.D.'s second month at RGMS, in which M.O. began calling J.D. "gay" "pussy" and "bitch" and continued to do so on multiple occasions.  JA 516-18, 545-46, 600.

2)      The incident in October 2008 as to which Ms. Schwab testified that J.D. complained that M.O. "had said something to him in the bathroom that was of a sexual nature."  JA 645.

3)      The incident in the winter of 2008-09 when M.O. unzipped his pants and exposed his genitals to J.D., which Ms. Schwab described as "serious and disturbing."  JA 521-22, 631-33, 662-64.

4)      The incident in Ms. Schwab's contemporaneous log in which she wrote that "[M.O.] accosted [J.D.] in the hallway" in February 2009. JA 371.

5)      The March 2009 incident in which M.O. grabbed J.D. and humped him in class.  JA 589-90, 743.

6)      Mr. Doe's March 2009 complaint that "M.O. keeps making sexual remarks and gestures" toward J.D.  JA 375.

7)      The Fall 2009 incident about which Ms. Schwab acknowledged that J.D reported to her that M.O. had said something to him that made him "uncomfortable."  JA 676-78.

8)      The incident in Ms. Schwab's log in which J.D. reported that M.O. "made a harassing remark" to him at the water fountain in November 2009.  JA 324.

9)      The incident in January 2010 in which M.O., half-naked with his pants down, tried to climb into J.D.'s bathroom stall.  JA 692-93.

10)     Mr. and Ms. Doe's increasingly frequent complaints in the 2009-2010 school year about the near-constant bullying by M.O. that J.D. reported to them.  JA 608.

The District cannot and does not dispute its witnesses' testimony.  Rather, the

District simply ignores the evidence and argues as though it does not exist.

**B.     The District's duty under Maryland negligence law required that it properly investigate J.D.'s complaints of harassment.**

Appellees owed J.D. a duty because a school serves "in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm."[1] *Lunsford v. Bd. of Educ.*, 280 Md. 665, 676-77 (1977).  In this case, the duty to protect J.D. included a duty to reasonably investigate his claims that M.O. was harassing him.  As the District acknowledges, a duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."  *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627 (1986).  Under Maryland negligence law, the Appellees had a duty to protect J.D. from harms about which they knew or should have known. *See, e.g.*, *Todd v. Mass Transit Admin.,* 373 Md. 149, 159 (2003); *Remsburg v. Montgomery*, 376 Md. 568, 591 (2003); *Valentine v. On Target, Inc.,* 353 Md. 544, 551 (1999); *Harrison v. Harrison*, 264 Md. 184, 189 (1972); *Bauman v. Woodfield*, 244 Md. 207, 216 (1966); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 394-95 (1997); *Sav-A-Stop Servs., Inc. v. Leonard*, 44 Md. App. 594, 598-99 (1981).

The District breached that standard by failing to respond to J.D.'s complaints about M.O.'s harassment with actions that were reasonably calculated to keep the

---

[1] The Does have not appealed the district court's ruling on their gross negligence claim.

5

boys apart and prevent M.O. from continuing to harass J.D.  A jury could conclude that the half-measures the District took could not have protected J.D.  For example, the sign-in/sign-out book for the bathroom that was only applicable to a portion of the day, and even then was not enforced, was not reasonably calculated to protect J.D.

The District's reliance on *Hunter v. Board of Education of Montgomery County*, a decision concerning educational malpractice claims, is misplaced.  In *Hunter*, the Maryland Court of Appeals declined to recognize a tort for negligence in pedagogical decisions.  *See* 292 Md. 481, 484 (1982).  The duty here, which the Court of Appeals recognized in *Lunsford*, is the duty to exercise reasonable care to protect students from harm.  Requiring schools to take reasonable steps to protect students from physical and psychological injury is very different from mandating that a school apply a particular pedagogical method to educate a specific student.

The Does ask only that schools respond reasonably to known complaints and take steps to investigate and to prevent future harm of the same kind.  Such an obligation does not implicate the public policy concerns expressed by the Court of Appeals in *Hunter*.  There are many actions the District could have taken, so long as they were reasonable – the *Lunsford* standard does not require any specific course of action.  In addition, there is no problem akin to the difficulty in determining "the cause and nature of any damages" from a pedagogical choice.  *Id.*

The damages here are akin to any other personal injury action. They flow directly from the sexual abuse that J.D. suffered, not from some teaching decision that was one factor in a multi-factorial assessment of a child's educational success.

Here, as both parties' experts acknowledged, the "standard of care" in addressing issues of sexual harassment includes a meaningful, complete investigation of the allegations. Appellants' Br. 9-12, 52-53. To the extent that the District did not have actual knowledge of the most severe harassment J.D. suffered, it breached its duty to him by failing to investigate properly.

The Does' citation of the Appellees' failure to follow their own policies as evidence that it breached its duty to protect J.D. does not make this action akin to an educational malpractice action, that is, an action requiring the District to follow any specific educational methodology or practice. Rather, the Does point to this evidence to show that the District completely disregarded its obligation to investigate and intervene to prevent sexual harassment. Indeed, RGMS officials could not even identify sexual harassment or explain the steps necessary to intervene to stop it from recurring. JA 567-68; 655-57; 658-61. Their complete lack of knowledge of AP 4170 is just further evidence that the District abdicated its duty to intervene to protect J.D. and other students from harm. Taking the evidence in the light most favorable to the Does, the court must accept the District's witnesses' admissions that they did not know about AP 4170 rather than

7

the District's erroneous claims that the steps that were taken actually followed the procedures about which RGMS employees were unaware.

### C. No heightened Title IX or constitutional standard applies to the Does' negligence claim.

Instead of addressing the Does' claim under the *Lunsford* standard, the District attempts to impute the heightened standard that applies to a claim under Title IX, citing *Davis v. Monroe County Board of Education*. As the Supreme Court recognized, however, a negligence action has a lower standard of proof than a Title IX claim. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). Even if the Does did not prove that the District acted with deliberate indifference as required under Title IX (a standard the Does have met, as explained below at 17-25), the District breached its duty to act with reasonable care to protect J.D. from harm about which school officials knew or should have known.

The District also conflates the "special relationship" required to prove a constitutional due process violation (not alleged in this case) with the "special duty" the Court of Appeals recognized in *Lunsford*. Despite the similar language, the two standards are not the same. *DeShaney* clearly distinguished the heightened standard for proving a due process violation from that necessary to prove a state-law negligence claim. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 201-02 (1989). The Does have not brought a constitutional claim in this case, and the *DeShaney* standard is therefore irrelevant.

8

**D.    The fact that the Does provided J.D. a cell phone is not a basis for a finding of contributory negligence because use of the cell phone did not contribute to J.D.'s injury.**

Finally, the District revives a theory that the district court rejected, that the Does were somehow contributorily negligent for allowing J.D. to use a cell phone. Appellees' Br. 55-56. The Does do not allege any harm from the text messages that M.O. sent to J.D. All of the sexual harassment and sexual assaults occurred before J.D. was given a cell phone in the spring of 2010. Thus, the use of a cell phone could not have contributed in any way to J.D.'s injury. Even though the District raised the same arguments for contributory negligence below, the district court did not hold that J.D. was contributorily negligence because of his use of the cell phone. JA 306-08.

Moreover, the District barely defends the district court's grounds for holding that J.D. was contributorily negligent. To find that J.D. was contributorily negligent as a matter of law, the Court would have to hold that no ordinarily prudent eight- or nine-year-old child would use the school bathroom after he had been assaulted there. *Brown v. Rogers*, 19 Md. App. 562, 566 (1974). Summary judgment is not appropriate on this point. *See, e.g., Int'l Brotherhood of Teamsters v. Willis Corroon Corp.*, 369 Md. 724, 740 (2002); *Moodie v. Santoni*, 292 Md. 582, 587 (1982); *Hill v. Wilson*, 134 Md. App. 472, 492 (2000). A jury could find

that J.D. acted reasonably for a child of his age and was not contributorily

negligent.

**II.    A reasonable jury could find that the District discriminated against J.D. on the basis of his sex, under Title IX.**

    **A.    The Does have not alleged a claim of sexual orientation discrimination based on name calling.**

Appellees inexplicably argue that J.D. has not stated a claim under Title IX

because his complaints included M.O.'s calling him "gay."  The District may be

correct that "case law is unsettled that *simply calling a person gay* constitutes

harassment because of sex," (Appellees' Br. 25-26 (emphasis added)), but this is

not a case of "simply calling a person gay."  The District mischaracterizes the

Does' Title IX claim.  The District disingenuously claims that "the record simply

does not reflect sex-based harassment."  Appellees' Br. 26.  Although M.O.'s

harassment of J.D. began with M.O. calling J.D. "gay," "pussy," and "bitch," this

name calling was just the beginning of a pattern of escalating sexual harassment

that culminated in repeated sexual assaults.

In *Davis*, the Supreme Court made clear that name-calling, unwanted

touching, and sexual assault are sufficient to constitute discrimination based on sex

for the purpose of Title IX.  *See Davis*, 526 U.S. at 654.  As the District recognizes,

"explicit proposals of sexual activity" and "objectively offensive touching"

"suffice[] to show that the harassment was based on the victim's sex."  Appellee's

Br. 25 (citing *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Thus, the conduct alleged in this case clearly suffices to prove a Title IX claim.

The District cites a recent, unpublished decision of this Court, *M.D. v. Sch. Bd. of City of Richmond*, for the principle that there is "no cause of action under Title IX for sexual orientation harassment." Appellees' Br. 26. But this Court did not make such a holding in that case. The plaintiff-appellant in *M.D.* argued that his claim was based on failure to conform to gender stereotypes. *See* 2014 WL 929342, *3 (4th Cir. March 11, 2014) . Thus, the case did not give this Court occasion to consider whether a claim for sexual orientation discrimination would state a claim under Title IX. *Id.* Therefore, even if this case involved name calling exclusively, and even if that name calling was based on sexual orientation, it would still address an open question of law in this Circuit.

**B.    The district court properly concluded that the facts, taken in the light most favorable to the Does, demonstrate that J.D. was denied educational opportunities based on the sexual harassment he suffered.**

**i.    The harassment J.D. suffered was severe, pervasive, and objectively offensive.**

J.D. and his parents presented ample evidence that J.D. suffered extreme trauma from sexual assault. As the district court recognized:

> Plaintiffs' evidence supports the inference that Classmate subjected JD to a few instances of sex-charged conduct, including raunchy remarks, lewd gestures, self-exposure and, arguably, inappropriate touching. Plaintiffs' evidence also suggests that this harassment

> caused JD considerable psychological harm; both a medical doctor and JD's therapist diagnosed him as having PTSD as a result of Classmate's harassment. Doc. No. 40-14 at 6; Doc. No. 40-16 at 32:11-18. Plaintiffs' evidence also supports the inference that Classmate's conduct caused JD to have nightmares, insomnia and, arguably, a recurrence of encopresis. Furthermore, one could reasonably conclude that JD was so afraid of Classmate that he refused to go to school. See Doc. No. 40-3 ¶ 9; Doc. No. 40-19 at 86–87. In that vein, JD's mother declares that Classmate's harassment ultimately compelled her to withdraw JD from Goddard after fifth grade. Doc. No. 40-3 ¶ 11. Therefore, drawing all fair inferences in Plaintiffs' favor, one could reasonably conclude that Classmate's conduct had a concrete, negative effect on JD's ability to attend school.

JA 289. To argue against the district court's analysis, the District cherry picks facts favorable to it from the record, in direct contravention of the standard the Court must apply on a motion for summary judgment. The Court must consider the facts in the light most favorable to the Does, as the non-moving parties. Under that standard, a reasonable juror could conclude that M.O.'s harassment of J.D. was severe and pervasive.

In addition, some of the District's citations are simply incorrect. For example, JA 466 (cited in Appellees' Brief at 29) makes no mention of any statement that John Doe or J.D. made to RGMS officials that "everything was fine." The document does, however, refer to Ms. Jellison's recollection that Mr. Doe was concerned about M.O.'s treatment of J.D., Ms. Jellison's admission that she "believed there was bullying and sexual harassment going on in her classroom," Ms. Jellison's recollection that J.D. told her he was afraid of M.O.,

12

Jane Doe's report to J.D.'s then-counselor that he was being bullied at school, J.D.'s report to the counselor in 2009 that he was having nightmares, and J.D.'s report to the counselor that he had been teased by M.O.

Throughout its brief, the District argues in different forms that J.D. could not have suffered any harm because his sexual interactions with M.O. were "consensual," but that is an untrue distortion based on a 10-year-old's misunderstanding of the word "consensual." It is clear from his videotape of his interview by the police that J.D. did not understand the meaning of "consensual" and "force" when he was interviewed by police. Only when the police investigator defined "consensual" for J.D. as "not using force" did J.D. say that the actions were "consensual." JA 463 at 15:29-15:43. J.D. continued to tell the police officer that sometimes M.O. used force and sometimes he did not. *Id.* J.D. was unequivocal, even in the interview in which he supposedly "recanted" his story, that even when no physical force was used, M.O. threatened him, and that J.D. did not want to participate in these sexual acts. *Id.* The district court correctly held that the evidence amply supported a finding that J.D. suffered "considerable psychological harm" as a result of the harassment. JA 289.

### ii.    J.D. was denied access to educational opportunities.

The psychological and physical harm that J.D. suffered, his subsequent withdrawal from school, and his fear of using the school bathroom are concrete deprivations of educational opportunities that meet the Title IX standard.

Courts have held that psychological injury is a deprivation of educational opportunities. *See Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 256 (6th Cir. 2000) (depression); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 954 (D. Kan. 2005) (plaintiff suffered from post-traumatic stress disorder, anxiety disorder, and avoidant personality disorder); *Bruning ex rel. Bruning v. Carroll Cnty. Sch. Dist.*, 486 F. Supp. 2d 892, 917-18 (N.D. Iowa 2007). Psychological injury can suffice even where the plaintiff's grades or attendance has not changed. *See K.M. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 360-61 (S.D.N.Y. 2005); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1084 (D. Minn. 2000); *Bruning*, 486 F. Supp. 2d at 917-18. Several courts have also held a decision to withdraw from school to be the type of deprivation that is actionable under Title IX. *See Vance*, 231 F.3d at 256; *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 953 (S.D. Ind. 2007); *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 445 (D. Conn. 2006); *Theno*, 377 F. Supp. 2d at 954.

14

Because their own expert agreed with J.D.'s two therapists that he exhibits symptoms of post-traumatic stress disorder from his time at RGMS, the District resorts to relying on reports that J.D. made to his then-counselor, reviewed second-hand by their expert Dr. Haller, that "school was fine." Appellees' Br. 35. However, the District selectively cites only the parts of Dr. Haller's report that bolsters its theory. From other portions of these notes, a reasonable juror could conclude that the psychological harm that J.D. suffered from M.O.'s harassment disrupted his learning process. It is clear that J.D. felt better and more engaged with school during the periods when there was no harassment, and felt worse and less engaged with school when the harassment was occurring.[2] *See* JA 466. The District ignores that "J.D. said that he was doing well <u>because</u> no one was bothering him." JA 466 (emphasis added). The District also ignores the note that states:

> [J.D.] talked about being afraid of [M.O.] who was exposing himself to [J.D.] when the two of them are in the bathroom or the library. [J.D.] also stated that [M.O.] had tried to throw him on the ground, pull his pants down, and tried to rape him.

---

[2] The District seems to suggest, in footnote 14, that J.D. had a responsibility to disclose his psychological harm to the school in order to prove a claim under Title IX. Neither the statute nor related case law contains such a requirement. To require that additional level of reporting by a child, in cases where school officials have already demonstrated their unwillingness to respond to concrete reports of harassment, would create a nearly insurmountable hurdle for any plaintiff. The fact that he did not disclose the psychological harm he may have been suffering is inapposite to the question of whether he suffered that harm, the relevant inquiry.

JA 467.

The District also argues that there is a substantive difference between withdrawing from school mid-year and choosing not to return to school. Although the Does dispute that assertion, in this case it is irrelevant. Mrs. Doe discovered the full extent of the sexual abuse when M.O. sent J.D. explicit text messages on the last day of the 2009-2010 school year. JA 483. At that point, Mrs. Doe had J.D. evaluated at Children's Hospital and called the police. *Id.* Although it is true that J.D. completed the school year at RGMS, it was only because the full extent of the sexual assaults were not revealed until after school ended. He did not return to RGMS for the next school year, which was the next possible time he could have attended the school.

Alternatively, the evidence presented by the Does meets the totality of the circumstances test used by some courts to assess whether harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities." *Davis*, 526 U.S. at 633. Under that test, where the conduct was severe, courts have assumed that the victim suffered the requisite amount of injury. *See, e.g.*, *Snelling v. Fall Mountain Reg'l Sch. Dist.*, CIV. 99-448-JD, 2001 WL 276975 (D.N.H. Mar. 21, 2001); *Theno*, 377 F. Supp. 2d at 954. A jury could conclude that being subjected to repeated instances of sexual assault over a two-year period is sufficiently severe, pervasive

16

and objectively offensive conduct that J.D.'s deprivation of educational

opportunities can be assumed.

Finally, the District barely addresses the Does' argument that a reasonable

juror could find that J.D. was denied access to the school bathroom, as evidenced

by his encopresis and his testimony that he did not want to use the school

bathrooms after the assaults occurred there.  There is no question that sex acts

occurred in the bathroom.  M.O. admitted to the police that this was the case.  JA

459-60.

**C.    The district court should have held that a reasonable jury could
       find that RGMS officials acted with deliberate indifference
       toward the harassment J.D. suffered.**

**i.    The district court properly concluded that a reasonable
       juror could find that RGMS officials had actual notice of
       M.O.'s harassment of J.D.**

At a minimum, as the district court noted, "[g]enuine factual disputes clearly

surround the question whether [Appellees] had actual knowledge of the

harassment."  JA 291.  As discussed above at pages 3-4, the Does have identified

more than ten instances from which a juror could conclude, based on the testimony

of *the District's witnesses* or documents created by them, that the District knew

about the escalating pattern of sexual harassment M.O. perpetrated against J.D.

Yet the District insists that the lack of specific sexual language in the

communications logs is dispositive, and that there were no reported instances of

harassment in the 2009-10 school year.  Appellees' Br. 29.  The District's own

witnesses admitted to knowing much more than the District now claims it knew.

Further, one of the communications logs on which it relies was created in 2010 in

anticipation of litigation.  JA 323-25.  The white-washed language in it is therefore

even more suspect.   Recognizing the pitfalls in relying on such a document, at

least one court has held that a communication log created after the fact is not

credible evidence from which a court may grant summary judgment.  *See K.M. v.*

*Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 353 (S.D.N.Y. 2005).   A

reasonable jury could conclude that the District knew at the time about the pattern

of serious harassment M.O. perpetrated against J.D.

The District also disingenuously argues that J.D.'s report of M.O. climbing

into his bathroom stall half-naked "did not indicate physical touching or abuse."

Their defense that this sexual behavior did not progress into a battery (because J.D.

escaped from the stall) does not take it out of the category of "harassment" – it was

a sexual assault.  A reasonable juror could find that a school that fails to be

concerned about such behavior only because the victim student escaped from the

aggressor before being touched has been willfully blind to the fact that the

aggressor may be more successful the next time, which indeed M.O. was in this

case.

Further, the District claims that J.D.'s statements to his then-counselor have some relevance to whether the District knew that J.D. was being harassed. Although those statements are irrelevant to the District's knowledge, if the Court were to consider them as evidence of the District's knowledge, the statements support the Does. The District misrepresents J.D.'s statements to the counselor, saying that "J.D. never told his therapist about any alleged incident of bullying or harassment" (Appellees' Br. 37) when, in fact, there is a note stating that J.D. "talked about being afraid of [M.O.] who was exposing himself to [J.D.] when the two of them are in the bathroom or the library. [J.D.] also stated that [M.O.] had tried to throw him on the ground, pull his pants down, and tried to rape him." JA 467.

> ### ii. A reasonable juror could conclude that the District's responses to J.D.'s harassment were clearly unreasonable in light of the known circumstances.

To defeat the Does' Title IX claim, the District must demonstrate that no reasonable juror could find that their actions were not calculated to be effective in preventing M.O.'s continued harassment of J.D. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Vance*, 231 F.3d at 260-62 ("[W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior."). To this end, the District summarily argues that its actions were

19

reasonable, and *amici* National School Board Association and Maryland Association of Boards of Education argue, in essence, that the Court should disregard all evidence that the Does have presented from which a jury could conclude that the actions were clearly unreasonable.

The Supreme Court in *Davis* recognized that although a negligence standard does not apply to cases of peer harassment, a school board may be liable when the school board's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. A reasonable juror could find, based on the evidence of the District's willful disregard of known harassment and utter failure to conform to accepted standards for addressing sexual harassment, that the District's inaction was "clearly unreasonable" in light of the known circumstances.

> ### a. The District's failure to follow accepted standards for addressing sexual harassment complaints is evidence of its deliberate indifference.

Appellees' and their *amici*'s arguments amount to a standard of such extreme deference to school officials' decisions that virtually no evidence could ever be introduced to refute their positions. The District and its *amici* seek a holding that there is no evidence a plaintiff could submit that would allow a jury to conclude that a school district acted unreasonably. They argue that any response a school takes, short of no response at all, deserves deference and summary

judgment.  This is not the standard articulated in *Davis*, where the Supreme Court held that a district "subjects" a student to peer harassment when it makes the student "vulnerable" to it.  *Davis*, 526 U.S. at 644.  In the present case, a jury could conclude that the District's failure to conform to any accepted standard for investigating and addressing sexual harassment complaints made J.D. vulnerable to M.O.'s continued sexual harassment.

For a jury to determine whether something is clearly unreasonable, it must have access to evidence of the practices school officials should have implemented. In this case, that comes in the form of expert testimony and guidance from the U.S. Department of Education on the need for schools to take action that is calculated to be effective.  This evidence is not dispositive, but it provides a framework under which the jury could conclude that the District's actions were clearly unreasonable.

Although *amici* correctly explain that the "knew or should have known" standard articulated in the 2010 Department of Education Dear Colleague Letter does not apply to cases in which the plaintiffs seek monetary damages, *amici* misrepresent the rest of the Department of Education's direction on responding to claims of sexual harassment, once school officials have actual knowledge.  As set forth in the Department of Education's response to *amicus* NSBA's concerns, the Department of Education clarified that, under *Davis*, "even in the case of private suits for monetary damages, schools have a duty to take action to prevent recurring

harassment where its remedial actions have proven inadequate or ineffective."[3] Thus, the Department of Education's opinions on what reasonable action would be in such situations is relevant evidence of whether school officials in this case acted unreasonably.

*Amici* also argue that the expert witness testimony proffered by both parties should be disregarded, as a matter of law, because only the school officials themselves have the ability to determine whether their actions were appropriate. If this were the case, a jury could never review school officials' actions to determine whether they were clearly unreasonable and whether their actions caused J.D.'s injury. *Davis* explicitly affords a jury the power to make this determination.

As the Federal Rules of Evidence recognize, expert testimony should be admitted when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[3] Russlynn Ali, Letter to Francisco Negron (March 25, 2011), http://www.nsba.org/sites/default/files/reports/ED_Response_-_NSBA_Bullying_Letter_2011.pdf (last visited June 23, 2014). (last visited June 23, 2014)n

Fed. R. Evid. 702. *Amici* are correct that "educators must often exercise professional judgment in carrying out their day-to-day responsibilities." But that does not mean that a jury can never evaluate whether school officials failed to exercise such judgment reasonably thereby causing the plaintiff's injuries. Rather, that professional judgment is an appropriate subject for expert testimony. Indeed, experts regularly opine on issues of causation. *See Briggs v. Cochran*, 202 F.3d 257 (4th Cir. 1999); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 (4th Cir. 1990); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, n.2 (4th Cir. 1988); *Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982); *see also Crickenberger v. Hyundai Motor Am.*, 404 Md. 37, 43-44 (2008); *Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 209 (1992); *Rite Aid Corp. v. Levy-Gray*, 162 Md. App. 673, 709 (2005) *aff'd*, 391 Md. 608 (2006).

Likewise, a jury should be permitted to consider, as evidence that supports a finding of deliberate indifference, that the District utterly failed to implement Board policies concerning the investigation and response to claims of sexual harassment, to the point that RGMS officials did not even know the policies existed. Although the District claims without evidence that RGMS officials implemented AP 4170, the undisputed testimony was that RGMS school personnel never used AP 4170 and did not know what it required, even when that form was in wide use by other schools in Prince George's County. Ms. Jellison had never

seen the forms attached to the administrative procedure prior to her deposition.  JA

580-81.  Ms. Schwab did not know that the forms existed.  JA 663-65.  During the

2008-09 and 2009-10 school years, Ms. Schwab was unaware of her obligation to

report claims of sexual harassment to the Regional Assistant Superintendent or

anyone else outside the school.  JA 682.  In fact, Ms. Schwab did not believe there

was a policy for reporting sexual harassment claims before Fall 2010 when a new

policy related to bullying was implemented.  JA 666-67.

Use of the forms attached to AP 4170 ensures that a complete and thorough

investigation is conducted in response to an allegation of sexual harassment.  For

the two-year period in which J.D. was a student at RGMS, no 4170 forms were

forwarded by RGMS to the Equity Assurance Office, a fact that the Director of that

Office at the time found surprising, JA 558-59, and that a jury could rely on in

finding that RGMS acted in a manner that was clearly unreasonable.

### b.    A fact finder could conclude that the District's actions were not reasonably calculated to be effective in preventing M.O.'s harassment of J.D.

To find a violation of Title IX does not, as *amici* suggests, require that the

District made a conscious choice to affirmatively harm J.D., it simply requires that

in the face of knowledge of repeated sexual harassment, school officials took

actions that were not reasonably calculated to stop the harassment, or failed to take

actions that were so calculated.  A school's response to known harassment is

24

unreasonable when it is not calculated to be effective, or when repeated harassment demonstrates that it has not been effective. *See Vance*, 231 F.3d at 260-62 ("[W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior."). The Does are not required to demonstrate that Appellees purposely harmed J.D., but that in response to known harassment, they knowingly made J.D. vulnerable to harassment. *See Davis*, 526 U.S. at 645.

Here, Ms. Schwab and Ms. Jellison admitted in their depositions that they knew about many instances of sexual harassment against J.D. The District nonetheless continues to deny that it had knowledge of all but a handful of these complaints, and therefore claims that its responses to the other complaints were not "clearly unreasonable." A reasonable jury could conclude otherwise -- that J.D. suffered from an ongoing pattern of escalating sexual harassment of which the District had knowledge (and additional instances about which it would have known had it conducted a reasonable investigation) and that the District, by failing to recognize the pattern and take meaningful steps to separate M.O. from J.D., left J.D. unnecessarily vulnerable to the severe sexual assaults he ultimately suffered.

## **Conclusion**

Appellees want this Court to hold that schools have no duty to ensure the safety of their students from other students, even though the Supreme Court and the Maryland Court of Appeals have clearly stated that such a duty exists under both state and federal law.  Because a reasonable jury could find that the District breached its duty to J.D. under both Title IX and Maryland negligence law, this Court should reverse the decision of the district court and remand this case for trial.

Respectfully submitted,

Dated:  June 25, 2014

<div style="margin-left:40%">

_____/s/_____

Sharon Krevor-Weisbaum
Andrew D. Freeman
Laura Ginsberg Abelson
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street
Suite 1700
Baltimore, MD 21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
skw@browngold.com
adf@browngold.com
labelson@browngold.com

***Attorneys for Appellants***

</div>

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS
## AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because this brief contains 6234 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in a 14-point Times New Roman font.

Respectfully submitted,

Date:  June 25, 2014                 By: _____/s/_____
                                          Laura Ginsberg Abelson
                                          *Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all counsel.

By: _____/s/_____

Laura Ginsberg Abelson
*Counsel for Appellants*